[Civ. No. 59183. Second Dist., Div. Five. June 12, 1981.]

ROCKWELL INTERNATIONAL, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
DUNCAN HAYLOCK, Respondents.

COUNSEL

Kendig, Stockwell & Gleason, Eugene L. Stockwell, Jr., and Owens O'Keefe Miller for Petitioner.

Koszdin & Siegel and Jack P. Koszdin for Respondents.

OPINION

STEPHENS, Acting P. J.—Respondent Workers' Compensation Appeals Board (WCAB) has found that respondent Duncan Haylock (hereinafter also applicant) has sustained injury to his psyche arising out of and occurring in the course of his employment for petitioner Rockwell International (hereinafter Rockwell) as a consequence of disciplinary action taken by Rockwell against applicant. The discipline was imposed for alleged misconduct by applicant while on the employment premises. Rockwell challenges the WCAB's finding of compensability under the Workers' Compensation Act on the reasoning that since the conduct for which applicant was disciplined was outside the course of applicant's employment then the resulting psychiatric problems as a consequence of such discipline cannot be held compensable. For the reasons stated herein, we annul the decision of the WCAB and remand the matter for further proceedings.

I

The pertinent facts and the analysis of the WCAB are set forth in WCAB's opinion and order granting reconsideration in pertinent part as follows: "On February 1, 1980, applicant petitioned for reconsideration of the Findings and Order of January 11, 1980, wherein it was found [by the workers' compensation judge] that applicant Haylock, a 30-year old custodian, did not sustain industrial injury to his nervous system during the period July 9, 1976 to November 20, 1976. . . . [Applicant] contends, in substance, that the workers' compensation judge erred and is not supported by substantial evidence . . . in failing to find that the injury herein arose out of and occurred in the course of applicant's employment. . . .

"The injury alleged herein consists of a psychiatric reaction to certain discipline imposed by the employer. The workers' compensation judge found this discipline to be justified, and any resultant disability noncompensable, as such discipline was imposed for certain conduct of applicant on July 9, 1976, which was not in the course of his employment.

"In his Report on Petition for Reconsideration, the worker's compensation judge summarized the relevant facts as follows: '*Applicant contends* that on [July 9, 1976] he was a passenger in a company pickup truck being driven by Juarez, an employee with whom he was assigned to work, and that they were on company property on their way to a break area for an authorized coffee break when, to applicant's surprise, Juarez unaccountably accelerated the truck to a very high speed, was chased and ultimately stopped at a security gate.

"'After being questioned by the security officer, applicant was reprimanded, given 95 demerits, and suspended for five days by his supervisor, Roy Lavender. In his testimony as well as in his statement to the security officer, applicant maintained that he had nothing to do with Juarez' conduct, that he knew nothing about any beer or liquor, that he was simply an innocent bystander, and that he remained in the truck at all times and did not climb from the passenger compartment into the truck bed.

"'*James Kervin testified* substantially as follows on August 4, 1978: He was working in the employer's security department on July 9, 1976, and was assigned to observe employees suspected of having a mop buck-

et filled with ice and beer. He saw Juarez and applicant stop at an area where maintenance supplies were kept. He saw Juarez carry out a mop bucket and a plastic trash container which was put over the bucket (presumably in the truck bed). He then followed the truck, and the chase began at speeds of over 55 to 60 miles an hour. During the course of the chase, he saw applicant climb from the cab of the truck into the truck bed while the truck was going at an excessive speed. It then became too dangerous to follow the truck closely, the road being dusty and curvy, and he lost sight of the truck until he saw it again when it was stopped at the security gate. He did not see applicant throw anything from the truck. At the gate he observed that the mop bucket was no longer in the truck. . . . He then went back to the area where he had seen applicant climb into the bed of the truck and found "the" mop bucket and a can of beer in the bushes. . . .'

"After considering the foregoing and the testimony of other employees of [Rockwell] the workers' compensation judge noted in his report as follows: 'It is concluded as a matter of fact that applicant did climb into the truck bed and dispose, temporarily, of the mop bucket and beer which was later found by Kervin and Manning. . . [B]ased upon Kervin's statement that the mop bucket was no longer in the truck when it was stopped at the gate and on his statements that he saw Juarez put the bucket in the truck and saw applicant climb into the truck [bed] during the chase, it is concluded that applicant did in fact do so and that he threw the bucket from the truck, the same bucket Kervin later found in the area where he had seen applicant get into the back of the truck. It is further concluded that there was beer in the bucket. There otherwise would have been no reason to throw it out (unless other liquor was present).'

"In support of his finding that the discipline was justifiable the workers' compensation judge noted as follows: '. . . [R]isking life and limb by climbing from the passenger's seat into the bed of a fastmoving truck is clearly an unreasonable act which is outside the course of employment, no matter what the purpose (barring very extraordinary circumstances). In this case the purpose of the act was clearly to dispose of evidence which could have linked applicant with drinking on the job.

"'Applicant's conduct was unequivocally far outside the course of his employment. Said conduct caused him to be disciplined by the employer. Consequently any emotional reaction to the discipline was

unmistakably non-industrial. Workers' Compensation is a no fault system. However, before employees who are at fault can recover for injuries occasioned by their fault, they must be acting in the course of their employment. Applicant's fault in this case took him far beyond the course of his employment. Accordingly, liability for the resultant psychiatric injury cannot reasonably be imposed upon [Rockwell]. . . .'

"We shall afford the workers' compensation judge's determination of credibility matters the 'great weight' to which they are entitled. (See *Garza* v. *WCAB* (1970) [3 Cal. 3d 312] 35 CCC 500.) The discipline imposed by the employer *may* have been for acts done by applicant outside the course of his employment on July 9, 1976, and thus was justified. However, based on our review of the medical records, we are persuaded that an industrial injury to applicant's psyche was incurred which may or may not have resulted in permanent disability. Both Drs. Koenig and Wayman noted applicant's belief to the effect that he was unjustly disciplined: Dr. Wayman noting that applicant believed 'he wasn't at fault' (see report of April 26, 1977), Dr. Koenig noting that applicant 'claimed to have been the victim of circumstantial evidence' (see report of January 10, 1978). [(Italics added.)]

"Whether or not the discipline was justified, it caused disability. . . .

" . . . . It is thus possible to find psychiatric injury, even though applicant may have acted improperly on July 9, 1976. Accordingly, reconsideration shall be granted to find an industrial injury to applicant's psyche, with this matter returned to the trial level for further proceedings and decision on the remaining issues. . . ."

## II

■ The question presented herein is what impact on the compensability of applicant's claimed industrial injury is there whether or not the conduct for which applicant was disciplined was outside the course of applicant's employment. The WCAB has concluded that, even assuming the conduct for which applicant was disciplined was outside the course of his employment, applicant's psychiatric injury is covered under the Workers' Compensation Act since such discipline arose out of the employment relationship. We, however, conclude to the contrary.

Recently in *Pacific Tel. & Tel. Co.* v. *Workers' Comp. Appeals Bd.* (1980) 112 Cal.App.3d 241 [169 Cal.Rptr. 285], we were called upon

to decide the compensability under the Workers' Compensation Act of a psychiatric injury sustained by an advertising salesperson as the result of both the stress from an accusation by his employer (Pacific Telephone) that he had forged customer signatures on advertising contracts and the stress from the subsequent investigation by the employer of that accusation and the termination of his employment.

"We deem[ed] it beyond dispute that if [the employee] had not forged any signatures that any injury to his emotional state would be compensable under the Workers' Compensation Act. This would be true even assuming Pacific Telephone had acted reasonably and properly in its accusation, investigation and discharge of [the employee]; the resulting psychiatric conditions would be concerned with [the employee's] underlying legitimate conduct (entering into advertising contracts with customers) which, in fact, had been in the course of his employment. Negligence by the employer is not a condition of compensability under the Workers' Compensation Act. (Lab. Code, § 3600, subd. (c).)" (*Pacific Tel. & Tel. Co.* v. *Workers' Comp. Appeals Bd., supra,* 112 Cal.App.3d at p. 245.)

We could not, however, "conceive of a realistic argument that [the employee] would be directly or indirectly serving his employer by the forging of contract signatures. Accordingly, [we held that any] injury sustained during the actual furtherance of the criminal activity of forgery would not be compensable." (*Pacific Tel. & Tel. Co., supra,* 112 Cal.App.3d at p. 246.) Noting that there "the claimed industrial injury was not sustained directly during the course of the alleged criminal activity but sustained as a consequence of the accusation, investigation and termination of [the employee]," we further held that if the employee "in fact engaged in the criminal act of forgery, his injury [as a consequence of the employer's accusation, investigation and discharge of him] cannot be held compensable under the Workers' Compensation Act, as his injury would not be a consequence of his employment but incidental to his criminal conduct." (*Pac. Tel. & Tel. Co., supra,* 112 Cal.App.3d at pp. 246-247.)

The obvious difference between the present matter and *Pacific Tel. & Tel. Co.* is that here the conduct for which applicant was disciplined by the employer is noncriminal in nature. We do not, however, view this as a critical distinction in applying the reasoning of *Pacific Tel. & Tel. Co.* to the present matter.

It is clear that in *Pacific Tel. & Tel. Co.* the employee's conduct of forging signatures on contracts (if indeed he did so) would be outside the course of employment. No rational distinction can be made between the treatment as to compensability under the Workers' Compensation Act of criminal conduct and of noncriminal conduct which is also outside the course of employment. To hold otherwise would lead to some inconsistent results under the Workers' Compensation Act.

Labor Code section 3600 excludes certain types of injuries from compensability under the Workers' Compensation Act: an injury sustained as a proximate result of the employee's intoxication (Lab. Code, § 3600, subd. (d)); intentionally self-inflicted injuries (subd. (e)); and, injuries arising "out of an altercation in which the injured employee is the initial physical aggressor" (subd. (g)). Thus, if for example the employer disciplines the employee for being the initial physical aggressor in an altercation at work, any stress-caused injury due to the employer's disciplinary action should be no more compensable under the Workers' Compensation Act than any injury sustained by the employee as a direct result of such altercation. Similarly, if an employee is disciplined by the employer for engaging in "horseplay" while at work (see *Hodges v. Workers' Comp. Appeals Bd.* (1978) 82 Cal.App.3d 894 [147 Cal.Rptr. 546]; *Argonaut Ins. Co. v. Workmen's Comp. App. Bd.* (1967) 247 Cal.App.2d 669 [55 Cal.Rptr. 810]), stress-related injury as a consequence of such discipline should be no more compensable under the act than any injury sustained directly during the course of such horseplay.

Accordingly, we hold that if applicant were disciplined for conduct *outside the course of his employment*, any injury sustained as a consequence of such discipline is not compensable under the Workers' Compensation Act. Since the WCAB found it unnecessary to closely review the workers' compensation judge's finding on whether the conduct for which applicant was disciplined was outside the course of his employment, the matter will be remanded to the WCAB for a specific finding on that point. (*Pacific Tel. & Tel. Co., supra,* 112 Cal.App.3d at p. 247.) In this regard, we observe that even the workers' compensation judge noted that there were many unanswered questions concerning the circumstances surrounding the incident for which applicant was disciplined.

On remand, Rockwell, by its special defense, has the burden of proof by a preponderance of the evidence, that the conduct for which applicant was disciplined was outside the course of applicant's employment.

■ ■■ ■ All reasonable doubts, however are to be resolved in favor of applicant. (*Pacific Tel. & Tel. Co., supra*, 112 Cal.App.2d at p. 247.)[1]

### III

The WCAB's decision is annulled and the matter remanded to the WCAB for further proceedings as are consistent with our opinion herein.

Hastings, J., and Older, J.,* concurred.

The petition of respondent Haylock for a hearing by the Supreme Court was denied August 6, 1981. Kaus, J., did not participate therein.

---

[1]*Ross* v. *Workmen's Comp. Appeals Bd.* (1971) 21 Cal.App.3d 949, 955 [99 Cal.Rptr. 79]: "Claimant has the burden of proving a causal relationship between his employment and his injury, but he who claims a wrongdoing has the burden of proving that issue (Evid. Code, § 520), and all reasonable doubts as to whether an injury arose out of employment are to be resolved in employee's favor. (*Garza* v. *Workmen's Comp. App. Bd.* [(1970) 3 Cal.3d 312, 317 (90 Cal.Rptr. 355, 475 P.2d 451)])."

*Assigned by the Chairperson of the Judicial Council.