884 P.2d 368

**Regina M. MITCHELL, Claimant–Appellant,**

v.

**STATE of Hawai'i, DEPARTMENT OF EDUCATION, Employer–Appellee, Self–Insured.**

**No. 16881.**

Supreme Court of Hawai'i.

Nov. 1, 1994.

---

Vernon Yu of Park, Kim & Yu, Honolulu, for claimant-appellant.

Kathleen Racuya–Markrich (Sherri–Ann Loo, with her on the brief), Deputy Attys. Gen., Honolulu, for employer-appellee, self-insured.

Kenneth B. Hipp and Michael F. Nauyokas of Goodsill, Anderson, Quinn & Stifel, on the brief, Honolulu, for amicus curiae Hawai'i Employers Council.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

Claimant-appellant Regina M. Mitchell, an elementary school teacher, appeals from the Labor and Industrial Relations Appeals Board's (the Board) decision which partially denied workers' compensation benefits for her stress-related injury. The injury claimed by Mitchell arose out of a disciplinary measure taken against her for violating the school rule prohibiting the use of corporal punishment. Mitchell maintains that her injury arose out of and in the course of employment and was therefore compensable under the Hawai'i Workers' Compensation Law, Hawai'i Revised Statutes (HRS) chapter 386. Mitchell's employer, employer-appellee the State of Hawai'i, Department of Education (the DOE), contends that workers' compensation benefits were properly denied because an injury precipitated by stress resulting from a disciplinary action for proper cause does not reasonably flow from the conditions of employment.

For the reasons discussed below, we conclude that this court lacks appellate jurisdiction and therefore dismiss this appeal.

## I. BACKGROUND

In September 1989, Mitchell was hired by the DOE as a full-time sixth-grade teacher at Kealakehe Intermediate School (KIS). KIS utilized a "team teaching" method wherein teachers were assigned to teams, and each team established its own rules regarding teaching and classroom management. Teachers were expected to adhere to their assigned team's rules. One of the rules of Mitchell's team was the prohibition against the use of rewards to motivate students. Nevertheless, Mitchell disregarded this rule and rewarded her students for completing their assignments with Friday afternoon parties, treats, and five minutes of play time on a Nintendo video game machine, which she had brought from home.

KIS principal, Brian Nakashima, disapproved of Mitchell's violation of her team's rules and, at a meeting in October 1989, warned her against the use of rewards; however, Mitchell's practice continued. At a November 1, 1989 meeting, Nakashima again expressed disapproval of Mitchell's teaching method; he demanded that she remove the video game from the classroom and discontinue the Friday afternoon reward parties. Nakashima also criticized Mitchell's supervision of study-hall class and her failure to timely submit her grades. After the November 1 meeting, Mitchell became distressed and developed "flu-like" symptoms (low-grade fevers and general malaise), which she attributed to her conflicts with Nakashima.

On January 18, 1990, Mitchell and her students brought in "goodies" for a reward party. Just prior to the afternoon party, Mitchell was informed that one of the students (Joseph) had pilfered cookies intended for the party. Mitchell confronted Joseph and discovered the cookies in his possession. As Mitchell continued class, Joseph became upset and harassed the classmate who had reported him to Mitchell. When reproached by Mitchell, Joseph became unruly. According to Mitchell,

> Joseph jumped out of his seat and he rushed across to my desk and he was yelling . . . and he started grabbing papers on my desk. With him grabbing the papers and me grabbing—trying to grab them back I never stood up but I bumped him [with the] inside of my forearm.

Joseph, on the other hand, accused Mitchell of striking him for stealing the cookies and throwing papers. Several students wrote letters in support of Mitchell's position that she did not hit Joseph. Nakashima, however, after conducting his own investigation of the incident, recommended to the superinten-

dent that Mitchell be suspended for five days, without pay, for violating the DOE's rule prohibiting corporal punishment.

In the weeks following Nakashima's recommendation for suspension, Mitchell became feverish, disoriented, and confused; she found it difficult to work and frequently left work early. She last reported to work on February 5, 1990.[1]

On April 6, 1990, Mitchell filed for workers' compensation, alleging that she suffered a stress-related work injury on November 1, 1989. Mitchell's treating physicians collectively agreed that her depressive symptoms (*e.g.*, recurring low-grade fever, headaches, fatigue, insomnia, and decreased appetite) were pathological manifestations of the stress at work following her conflicts with Nakashima and his subsequent recommendation for her suspension. The Director of the Department of Labor and Industrial Relations (the Director) denied Mitchell's claim, explaining that

[a]fter reviewing the entire matter, we find claimant's condition, "reactive depression," resulting from employer's pending disciplinary action to suspend claimant for striking a student, to be personal and outside the scope of employment.

Mitchell appealed the Director's decision to the Board on November 21, 1990. The Board determined that Mitchell sustained stress-related injuries on: (1) November 1, 1989, at the meeting with Nakashima wherein he criticized the reward aspect of Mitchell's teaching method; and (2) February 5, 1990 (Mitchell's last day at work), following Nakashima's recommendation for suspension in January 1990 for violating the DOE's rule prohibiting corporal punishment. The Board determined the first incident to be compensable but denied compensation for the second incident. The Board held that, absent a clear legislative statement, a personal injury resulting from the stress of a disciplinary action by an employer was not a compensable injury within the meaning of HRS § 386–3. Accordingly, the Board reversed in part the Director's decision and remanded for a "de-

termination as to what workers' compensation benefits, if any, [Mitchell] is entitled for the [first incident] period between November 1, 1989 through February 5, 1990."

None of the parties have appealed the Board's decision and order relating to the first incident; however, Mitchell timely appealed the Board's decision and order regarding the second incident.

## II. *DISCUSSION*

■ The DOE contends that this court lacks appellate jurisdiction because Mitchell did not appeal from a final decision and order as required under HRS § 91–14(a) (1985). Section 91–14(a) provides:

Any person aggrieved by a *final decision and order* in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter[.]

HRS § 91–14(a) (1985) (emphasis added). " 'Final order' means an order ending the proceedings, leaving nothing further to be accomplished. Consequently, an order is not final if the rights of a party involved remain undetermined or if the matter is retained for further action." *Gealon v. Keala,* 60 Haw. 513, 520, 591 P.2d 621, 626 (1979) (citations omitted).

The DOE maintains that the instant case lacks the requisite degree of finality because Mitchell's compensation benefits for the first incident remain undetermined. In *Williams v. Kleenco,* 2 Haw.App. 219, 629 P.2d 125 (1981), the Intermediate Court of Appeals (ICA) held that, "[w]here the Labor and Industrial Relations Appeals Board remands a matter to the director of [workers'] compensation for a determination of the amount of the award, the decision and order is not final and is therefore not appealable." *Id.*

In the case before us, there was no final decision with respect to Mitchell's compensation benefits for the first incident, which occurred on November 1, 1989. As stated previously, the Board determined the first

---

1. The record indicates that, although the superintendent agreed with Nakashima's recommendation regarding Mitchell's suspension, the suspension was never implemented because Mitchell did not report to work after February 5, 1990.

incident to be compensable and reversed the Director's decision, remanding the case for a "determination as to what worker's compensation benefits, if any, [Mitchell was] entitled for the period between November 1, 1989 through February 5, 1990." Such determination has not been made; therefore, the requisite degree of finality is lacking with respect to this case. *Gealon,* 60 Haw. at 520, 591 P.2d at 626.

However, as previously noted, HRS § 91–14(a) also provides that "[a]ny person aggrieved ... *by a preliminary ruling of the nature that deferral or review pending entry of a subsequent final decision would deprive appellant of adequate relief* is entitled to judicial review thereof under this chapter." (Emphasis added.) Although the Board's decision partially denying workers' compensation benefits in this case is preliminary[2] to a final decision regarding compensability, deferral of review pending entry of a final decision will not deprive appellant of adequate relief. There is nothing to prevent Mitchell from seeking judicial review of the Board's legal conclusions after the Director determines the amount of Mitchell's compensation, if any, for the first incident. *See* Hawai'i Administrative Rules § 12–47–24(c) (1994);[3] HRS § 386–88 (1985); *cf. In re Hawai'i Gov't Employees' Ass'n,* 63 Haw. 85, 89, 621 P.2d 361, 364 (1980) (upholding jurisdiction where the agency's preliminary ruling "end[ed] the proceedings in regard to" an organization that was denied permission to intervene).

One of the ends served by the finality requirement is the avoidance of piecemeal litigation. *See, e.g., North Dakota State Bd. of Pharmacy v. Snyder's Drug Stores, Inc.,* 414 U.S. 156, 159, 94 S.Ct. 407, 410, 38 L.Ed.2d 379 (1973). Mitchell does not cite any applicable exception to the finality requirement codified in HRS § 91–14. This is not a case, for example, where a preliminary

ruling by the agency "requires immediate execution of a command that property be delivered to the appellant's adversary, and the losing party would be subjected to irreparable injury if appellate review had to wait the final outcome of the litigation." *Penn v. Transportation Lease Haw., Ltd.,* 2 Haw. App. 272, 274, 630 P.2d 646, 649 (1981) (citing *Forgay v. Conrad,* 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848)).

Mitchell's claim that the Director and the Board would "have to hear the case twice in the event this [c]ourt finds Mitchell's second injury compensable" does not cure the jurisdictional defect present in this appeal. This case will be ripe for judicial review only after the Director makes a determination as to the amount of compensation owed, if any. *See Inouye v. Board of Trustees of the Employees' Retirement Sys.,* 4 Haw.App. 526, 669 P.2d 638 (1983) (dismissing claimant's appeal for lack of jurisdiction). According to the ICA:

> the fact that an agency commits an error of law in one of its preliminary orders does not confer jurisdiction for immediate judicial review.... The statute [HRS § 91–14] does not allow an interlocutory appeal merely to review an agency's alleged error of law. Additionally, the mere fact that there is delay or extra expenses involved would not amount to prejudice and allow a preliminary order to be subject to judicial review. *Cf.* 73A C.J.S. Public Administrative Bodies & Procedure § 189 (1951).

*Id.* at 532 n. 6, 669 P.2d at 642 n. 6.

### III. *CONCLUSION*

We therefore conclude that we lack appellate jurisdiction to consider the merits of this appeal. Accordingly, the appeal is dismissed.

---

**2.** "Preliminary" means "preceding or leading up to the main part, matter, or business," *The Random House College Dictionary* at 1046 (Revised ed. 1979), or "introductory, initiatory, preceding[.]" *Black's Law Dictionary* (6th ed. 1990).

**3.** Section 12–47–24(c) of the Hawai'i Administrative Rules provides:

> Following the director's decision on remand, the director shall transmit the case file to the

board, and upon such transmittal, the board shall proceed to hear and determine the issues raised in the original appeal. Should any party desire to appeal issues addressed by the director's decision on remand, it shall be necessary for such party to file an appeal within twenty days after a copy of the decision on the remanded issue has been sent to the parties.