942 P.2d 514

**Regina M. MITCHELL, Claimant–Appellant,**

v.

**STATE of Hawai'i, DEPARTMENT OF EDUCATION, Employer–Appellee, Self–Insured.**

**No. 19868.**

Supreme Court of Hawai'i.

July 8, 1997.

Vernon Yu (of Park, Kim, Yu, & Remillard), on the briefs, Honolulu, for claimant-appellant Regina M. Mitchell.

Ruth I. Tsujimura, Dorothy Sellers, Steve K. Miyasaka, Deputy Attorneys General, on the briefs, for employer-appellee, self-insured State of Hawai'i, Department of Education.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

Claimant-appellant Regina M. Mitchell, an elementary school teacher, appeals from the Labor and Industrial Relations Appeals Board's (the Board) decision partially denying workers' compensation benefits for her stress-related injury. The injury claimed by Mitchell arose out of a disciplinary measure taken against her for violating the school rule prohibiting the use of corporal punishment. Mitchell maintains that her injury arose out of and in the course of employment and was therefore compensable under Hawaii's Workers' Compensation Law, Hawai'i Revised Statutes (HRS) chapter 386. Mitchell's employer, employer-appellee State of Hawai'i, Department of Education (the DOE), contends that workers' compensation benefits were properly denied because an injury precipitated by stress resulting from a disciplinary action for proper cause does not fall within the scope of Mitchell's employment. We disagree with the DOE.

Accordingly, for the reasons discussed below, we vacate the Board's decision and remand for proceedings consistent with this opinion.

## I. BACKGROUND

In September 1989, the DOE hired Mitchell as a full-time sixth-grade teacher at Kealakehe Intermediate School (KIS). KIS utilized a "team teaching" method wherein teachers were assigned to teams, and each team established its own rules regarding teaching and classroom management. Teachers were expected to adhere to their assigned team's rules. One of the rules of Mitchell's team was the prohibition against the use of rewards to motivate students. Nevertheless, Mitchell disregarded this rule

and rewarded her students for completing their assignments with Friday afternoon parties, treats, and five minutes of play time on a Nintendo video game machine that she had brought from home.

KIS principal, Brian Nakashima, disapproved of Mitchell's violation of her team's rules and, at a meeting in October 1989, warned her against the use of rewards; however, Mitchell's practice continued. At a November 1, 1989 meeting, Nakashima again expressed disapproval of Mitchell's teaching method; he demanded that she remove the video game from the classroom and discontinue the Friday afternoon reward parties. Nakashima also criticized Mitchell's supervision of study-hall class and her failure to timely submit her grades. After the November 1 meeting, Mitchell became distressed and developed "flu-like" symptoms (low-grade fevers and general malaise), which she attributed to her conflicts with Nakashima.

On January 18, 1990, Mitchell and her students brought in "goodies" for a reward party. Just prior to the afternoon party, Mitchell was informed that one of the students (Joseph) had pilfered cookies intended for the party. Mitchell confronted Joseph and discovered the cookies in his possession. As Mitchell continued class, Joseph became upset and harassed the classmate who had reported him to Mitchell. When reproached by Mitchell, Joseph became unruly. According to Mitchell,

> Joseph jumped out of his seat and he rushed across to my desk and he was yelling ... and he started grabbing papers on my desk. With him grabbing the papers and me grabbing—trying to grab them back I never stood up but I bumped him [with the] inside of my forearm.

Joseph, on the other hand, accused Mitchell of striking him for stealing the cookies and throwing the papers. Several students wrote letters in support of Mitchell's position that she did not hit Joseph. Nakashima, however, after conducting his own investigation of the incident, recommended to the superintendent that Mitchell be suspended for five days, without pay, for violating the DOE's rule prohibiting corporal punishment. Following Nakashima's recommendation for suspension, Mitchell became feverish, disoriented, and confused; she found it difficult to work and frequently left work early. She last reported to work on February 5, 1990.[1]

On April 6, 1990, Mitchell filed for workers' compensation, alleging that she suffered a stress-related work injury on November 1, 1989. Mitchell's treating physicians collectively agreed that her depressive symptoms (for example, recurring low-grade fever, headaches, fatigue, insomnia, and decreased appetite) were pathological manifestations of the stress at work following her conflicts with Nakashima and his subsequent recommendation for her suspension. On November 13, 1990, the Director of the Department of Labor and Industrial Relations (the Director) denied Mitchell's claim, explaining that, "[a]fter reviewing the entire matter, we find claimant's condition, 'reactive depression,' resulting from employer's pending disciplinary action to suspend claimant for striking a student, to be personal and outside the scope of employment."

Mitchell appealed the Director's decision to the Board on November 21, 1990. The Board heard the matter on December 16, 1991 and issued its decision and order on January 22, 1993. The Board determined that Mitchell sustained stress-related injuries on: (1) November 1, 1989, at the meeting with Nakashima wherein he criticized the reward aspect of Mitchell's teaching method; and (2) February 5, 1990 (Mitchell's last day at work), following Nakashima's recommendation for suspension in January 1990 for violating the DOE's rule prohibiting corporal punishment. The Board determined the first incident to be compensable but denied compensation for the second incident. The Board held that,

> (1) Having determined that Claimant suffered a new injury on February 5, 1990, as a result of stress caused by a disciplinary action, we conclude that claimant's disabl-

---

1.  The record indicates that, although the superintendent agreed with Nakashima's recommendation regarding Mitchell's suspension, the suspen- sion was never implemented because Mitchell did not report to work after February 5, 1990.

ing condition after February 5, 1990, is not compensable;

(2) Absent a clear legislative statement, we do not believe that the legislature intended to make compensable under Chapter 386, Hawaii Revised Statutes, a personal injury resulting from the stress of a disciplinary action initiated by an employer.

Accordingly, the Board reversed in part the Director's decision and remanded for a "determination as to what workers' compensation benefits, if any, [Mitchell] is entitled to for the [first incident] period between November 1, 1989 through February 5, 1990."

On February 22, 1993, Mitchell timely appealed the Board's decision and order regarding the second incident. *See Mitchell v. State,* 77 Hawai'i 305, 884 P.2d 368 (1994) (*Mitchell I* ). In *Mitchell I,* we held that we were without jurisdiction because Mitchell did not appeal from a final decision and order as required under HRS § 91–14(a) (1993)[2] insofar as the amount of compensation benefits owed to Mitchell for the first injury had yet to be determined. *Id.* at 308, 884 P.2d at 371.

On October 19, 1995, the Director held a hearing to determine Mitchell's compensation benefits for her November 1, 1989, work injury. On November 30, 1995, the Director issued a "Decision Supplemental to Award Dated November 13, 1990."

On December 20, 1995, Mitchell filed an Appeal and Notice of Appeal to the Board from the decisions issued by the Director on November 13, 1990 and November 30, 1995, to comply with various statutory and regulatory requirements and to preserve her right to appeal the Board's decision of January 22, 1993. Mitchell also filed a Notice of Appeal to this court from the Board's January 22, 1993 decision and order on December 29, 1995.

Thereafter, the parties presented to the Board a "Stipulation as to Facts and Issues on Appeal" (the stipulation), in which they agreed that: (1) the Director's decision of November 30, 1995 decided all remaining issues related to Mitchell's November 1, 1989 work injury; (2) the parties had no further issues to present concerning said work injury; (3) the issue of compensability of Mitchell's February 5, 1990 injury was the only remaining issue to be resolved[3] and would be ripe for judicial review upon approval of the stipulation by the Board; (4) the stipulation would be construed as a final decision of the Board of all issues pertaining to Mitchell's November 1, 1989 and February 5, 1990 injuries; and (5) Mitchell would withdraw her December 29, 1995 appeal and file a subsequent appeal concerning her February 5, 1990 injury.

On April 22, 1996, the Board approved the stipulation between the parties and issued an "Approval and Order," stating that the "[s]tipulation, together herewith, shall constitute the final Order of this Board herein, and all proceedings in this appeal are hereby concluded."

On May 7, 1996, the parties filed a stipulation to withdraw the December 29, 1995 appeal based on their mutual understanding that the appeal was filed prematurely and that Mitchell would thereafter notice a timely appeal. On May 17, 1996, Mitchell filed the present appeal to this court from the decision and order of the Board dated January 22, 1993.

Because the Director has concluded matters by determining the worker's compensation benefits owed to Mitchell pursuant to the first incident, this court now has before it a final and appealable order pursuant to HRS § 91–14(a). Thus, under HRS §§ 91–14(a), 386–88, and 602–5(1), and Rules 3 and 4 of the Hawai'i Rules of Appellate Proce-

---

**2.** HRS § 91–14(a) provides:
  Any person aggrieved by a *final decision and order* in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter[.]

(Emphasis added.)

**3.** Because the parties have limited their appeal to the issue of compensability, we need not address the genuineness of Mitchell's stress-related injury.

dure (HRAP), we have jurisdiction to hear this appeal.

This appeal, however, is limited to Mitchell's challenge of the Board's determination that the second injury—stress caused by disciplinary action taken by DOE in response to employee misconduct—was not compensable. For the reasons set forth below, we hold that it was compensable.

## II. *STANDARD OF REVIEW*

Appellate review of the Board's decision is governed by HRS § 91–14(g). *Diaz v. Oahu Sugar Co.,* 77 Hawai'i 152, 154, 883 P.2d 73, 75 (1994). HRS § 91–14(g) provides:

> Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1) In violation of constitutional or statutory provisions; or
>
> (2) In excess of the statutory authority or jurisdiction of the agency; or
>
> (3) Made upon unlawful procedure; or
>
> (4) Affected by other error of law; or
>
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

The parties have stipulated to the facts found by the Board. The only question properly before us is that of compensability for the February 5, 1990 injury, which is a question of law. We have stated that a "conclusion of law is not binding on an appellate court and is freely reviewable for its correctness. Thus, this court reviews conclusions of law *de novo,* under the right/wrong standard." *Id.* at 155, 883 P.2d at 76 (brackets and citation omitted).

Our review is "further qualified by the principle that the agency's decision carries a presumption of validity and appellant has the heavy burden of making a convincing showing that the decision is invalid because it is unjust and unreasonable in its consequences." *Sussel v. Civil Serv. Comm'n,* 74 Haw. 599, 608, 851 P.2d 311, 316, *reconsideration denied,* 74 Haw. 650, 857 P.2d 600 (1993) (citation and internal brackets omitted); *Bragg v. State Farm Mut. Auto. Ins. Co.,* 81 Hawai'i 302, 304, 916 P.2d 1203, 1205 (1996) (citation omitted).

## III. *DISCUSSION*

As previously indicated, this appeal presents a single question: whether an employee's stress-related injury resulting from disciplinary action taken by an employer in response to an employee's misconduct is a compensable injury under HRS § 386–3 (1985).

In interpreting Hawaii's workers' compensation statutes, we have explained that, in order

> [f]or an injury to be compensable under a workers' compensation statute, there must be a requisite nexus between the employment and the injury. The nexus requirement is articulated in Hawai'i, as in the majority of jurisdictions, on the basis that, to be compensable, an injury must arise out of and in the course of employment.

*Tate v. GTE Hawaiian Tel. Co.,* 77 Hawai'i 100, 103, 881 P.2d 1246, 1249 (1994) (footnote omitted). The specific statute at issue in this case, HRS § 386–3, provides in relevant part:

> If an employee suffers personal injury either by accident *arising out of and in the course of employment* or by disease proximately caused by or resulting from the nature of the employment, the employee's employer or the special compensation fund shall pay compensation to the employee or the employee's dependents as hereinafter provided.

(Emphasis added.)

When construing a statute, our primary goal is to ascertain and effectuate the legislative intent, which we obtain primarily from the language in the statute itself. *Franks v. City and County of Honolulu,* 74 Haw. 328, 334, 843 P.2d 668, 671 (1993). "We must read statutory language in the context

of the entire statute and construe it in a manner consistent with its purpose." *Id.* at 335, 843 P.2d at 671 (citation omitted).

We have traditionally construed HRS § 386-3 liberally in favor of conferring compensation because our " 'legislature has decided that work injuries are among the costs of production which industry is required to bear[.]' " *Chung v. Animal Clinic, Inc.*, 63 Haw. 642, 649, 636 P.2d 721, 726 (1981) (quoting *Akamine v. Hawaiian Packing & Crating Co.*, 53 Haw. 406, 409, 495 P.2d 1164, 1166 (1972)); *Royal State Nat'l Ins. Co. v. Labor and Indus. Relations Appeal Bd.*, 53 Haw. 32, 38, 487 P.2d 278, 282 (1971); *see also* Larson, *1B Workmen's Compensation Law*, § 43.51 (1993) [hereinafter, Larson] ("The theory of [workers'] compensation legislation is that the cost of all industrial accidents should be borne by the customer as a part of the cost of the product. It follows that any worker whose services form a regular and continuing part of the cost of that product ... is within the presumptive area of intended protection.").

Moreover, "[workers'] compensation laws are highly remedial in character. Their paramount purpose is to provide compensation for an employee for all *work-connected injuries, regardless of questions of negligence and proximate cause.* Courts should therefore give them a liberal construction in order to accomplish their beneficent purposes." *Evanson v. University of Hawaii*, 52 Haw. 595, 600, 483 P.2d 187, 191 (1971) (emphasis added) (citations omitted).

In *Wharton v. Hawaiian Electric Co., Inc.*, 80 Hawai'i 120, 906 P.2d 127 (1995), we were called upon to determine "whether [an employee's] disciplinary-induced stress injury, because of his [or her] misconduct, is compensable under HRS [§ ] 386-3[.]" *Id.* at 123, 906 P.2d at 130 (footnote omitted). Therein we acknowledged that "employee misconduct that involves deviation from the course of employment is material to the issue of compensability, although willful or negligent employee misconduct is generally irrelevant." *Id.* (citing Larson, *1A Workmen's Compensation Law*, § 30.00 at 6-1 (1995) [hereinafter, 1A Larson] ). We stated:

The test for determining whether an employee's activities are outside the course and scope of employment is [as follows]:

> When misconduct involves a prohibited overstepping of the boundaries defining the *ultimate work* to be done by the claimant, the prohibited act is outside the course of employment. But when misconduct involves a violation of regulations or prohibitions relating to *method* of accomplishing that ultimate work, the act remains within the course of employment. Violations of express prohibitions relating to incidental activities, such as seeking personal comfort, as distinguished from activities contributing directly to the accomplishment of the main job, are an interruption of the course of employment.

1A Larson, *supra*, § 31.00 at 6–10.

In other words, we must determine whether [the employee's] "misconduct" was outside or within the bounds of his [or her] employment duties. To put it another way, "a distinction must be made between (1) an unauthorized departure from the course of employment and (2) the performance of a duty in an unauthorized manner."

*Id.* (citation and brackets omitted) (emphases in original).

In *Wharton*, the employee (Wharton) served as an instrument and control supervisor. His duties included maintaining and repairing electronic controls. His employer took disciplinary action against Wharton for having falsified his time cards. Wharton then suffered a stress injury as a direct consequence of the disciplinary action imposed for his misconduct. The Board denied compensation, and he appealed to this court. We held that Wharton's stress injury fell outside the scope of workers' compensation coverage because his "misconduct ha[d] nothing to do with the work he was hired to do, i.e., maintaining and repairing electronic controls." *Id.* at 124, 906 P.2d at 131. In other words, falsifying time cards was an "unauthorized departure from the course of employment" as opposed to "the performance of a duty in an unauthorized manner." *Id.* at 123, 906 P.2d at 130.

In applying the *Wharton* test to the facts of this case, we must decide whether disciplinary action giving rise to Mitchell's stress-related injury arose out of an unauthorized departure from the course of her employment or from the performance of a duty in an unauthorized manner. We note that it makes no difference that Mitchell's stress injury arose indirectly out of her misconduct, that is, that it arose out of the disciplinary action taken by the DOE in response to her misconduct. The dispositive question is whether the conduct that gave rise to the disciplinary action is conduct within or outside the course of employment. If the conduct for which an employee is disciplined falls within the course of employment, any stress-related injury caused by a disciplinary action for such misconduct is compensable. *See Rockwell Int'l v. Workers' Compensation Appeals Bd.*, 120 Cal.App.3d 291, 175 Cal. Rptr. 219 (1981).

The facts indicate that the disciplinary action was prompted by Mitchell's alleged use of corporal punishment during class. Whether Mitchell in fact administered corporal punishment is not essential to the determination of compensability because misconduct, even if willful, does not necessarily preclude workers' compensation recovery. *Wharton*, 80 Hawai'i at 123, 906 P.2d at 130. Instead, we must determine whether Mitchell's alleged conduct, wrongful or otherwise, was related or incident to her duties as a teacher and, therefore, "in the course of employment."

Here, the incident occurred during school hours, in the classroom, and in an attempt to maintain order and discipline. As the classroom teacher, when Joseph became unruly, it became incumbent upon Mitchell to act in order to prevent further loss of control. In other words, Mitchell was performing her duty as a teacher to maintain classroom control. Even assuming, *arguendo*, that she did indeed effectuate this purpose by striking Joseph, she was nonetheless performing a duty of her employment, albeit in an unauthorized manner. This is precisely the type of misconduct that is considered to be within the scope of employment under *Wharton*.

The Hawai'i Insurers Council (HIC),[4] however, argues that *Wharton* mandates a finding of noncompensability because Mitchell was disciplined for conducting prohibited reward parties in her classroom. HIC contends that this constitutes a noncompensable, unauthorized departure from the course of Mitchell's duties of employment. We note that HIC has misapprehended the Board's Findings of Fact (FOF) as articulated in its January 22, 1993 "Decision and Order." FOF 10 provides that Mitchell's proposed suspension was based upon "violation of [the DOE's] rule against corporal punishment." This alleged misconduct occurred while Mitchell was performing her duty as a teacher, that is, maintaining control of her classroom. Thus, Mitchell's alleged use of corporal punishment constituted the performance of a duty in an unauthorized manner.

Accordingly, we hold that, even if Mitchell administered corporal punishment in violation of the work-rule prohibiting such conduct, thus warranting discipline, she nevertheless sustained a compensable injury because she was acting within the course of her employment at the time of the alleged misconduct.[5]

---

4. The Hawai'i Insurers Council submitted an amicus curiae brief on April 17, 1997, pursuant to this court's April 14, 1997 order granting its motion for leave to file said brief.

5. We note that this would not be the case were Mitchell's actions criminal. Rather,

> if the employee in fact engaged in [a] criminal act ..., his [or her] injury as a consequence of the employer's accusation, investigation, and discharge of him [or her] cannot be held compensable under the Workers' Compensation Act, because his [or her] injury would not be a consequence of his employment but incidental to his [or her] criminal conduct.

*Wharton*, 80 Hawai'i at 124, 906 P.2d at 131 (quoting *Pacific Tel. & Tel. Co. v. Workers' Comp. Appeals Bd.*, 112 Cal.App.3d 241, 246–47, 169 Cal.Rptr. 285, 289 (1980)).

In Hawai'i, a teacher's use of force is justifiable if the teacher

> believes that the force used is necessary to further such special purpose, including maintenance of reasonable discipline in a school, class, or other group, and that the use of such force is consistent with the welfare of the minors; and ... [t]he degree of force, if it had been used by the parent or guardian of the minor would not be unjustifiable under subsection (1)(b) of this section.

■ When construing our worker's compensation law, we are guided by the plain language of the statute and the legislature's intent that work-related injuries be considered as a cost of doing business. *Chung*, 63 Haw. at 649, 636 P.2d at 726. Moreover, the law is well-settled in Hawai'i that workers' compensation laws are construed liberally in favor of coverage because of its "remedial character" and "beneficent purpose." *Evanson*, 52 Haw. at 600, 483 P.2d at 190. "Their paramount purpose is to provide compensation for an employee *for all work connected injuries*, regardless of questions of negligence and proximate cause." *Id.* (emphasis added) (citation omitted).

Because the injury in this case arose "out of and in the course of the employment" and is not excluded by the *Wharton* rule, we are compelled to hold that it is compensible under HRS § 386–3. We note that many jurisdictions with statutes similar to HRS chapter 386 have expressly amended them to exclude from coverage psychological or stress-related injuries resulting from good faith disciplinary actions. For example, New York's workers' compensation statute provides that "the terms 'injury' and 'personal injury' shall not include an injury which is solely mental and is based on work related stress if such mental injury is a direct consequence of a lawful personnel decision involving a disciplinary action . . . taken in good faith by the employer." N.Y. Work. Comp. Law § 2 (McKinney 1994).

The workers' compensation statutes of Alaska, Maine, and Montana all provide that "a mental injury is not considered to arise out of and in the course of employment if it results from any disciplinary action . . . taken in good faith by the employer." Alaska Stat. § 23.30.265(17) (1992); Me.Rev.Stat. Ann. Tit. 39–A, § 201 (West 1993); and Mo. Ann. Stat. § 287.120 (Vernon 1994).

In Colorado, "[a] mental impairment shall not be considered to arise out of and in the course of employment if it results from a disciplinary action . . . taken in good faith by the employer." Colo.Rev.Stat. Ann. § 8–41–301(2)(a) (West 1994). In New Mexico,

"primary mental impairment" means a mental illness arising from an accidental injury arising out of and in the course of employment when the accidental injury involves no physical injury and consists of a psychologically traumatic event that is generally outside of a worker's usual experience and would evoke significant symptoms of distress in a worker in similar circumstances, but is not an event in connection with disciplinary, corrective or job evaluation action or cessation of the worker's employment[.]

N.M. Stat. Ann. § 52–1–24(B) (Michie 1994).

In the absence of an express exception in HRS § 386–3, we cannot unilaterally pronounce one. To do so would run counter to the clear import of HRS § 386–3. If the legislature should deem it advisable in the future, it can—as have the jurisdictions cited *supra*—amend HRS chapter 386 to exclude from coverage those injuries resulting from disciplinary action taken in good faith by the employer. However, unless and until the Hawai'i legislature chooses to amend HRS chapter 386, we are compelled to reach the result we have today.

## IV. *CONCLUSION*

Based on the foregoing, we vacate the Board's decision and remand for proceedings consistent with this opinion.

---

HRS § 703–309 (1985). Subsection (1)(b) allows the use of force against a minor by a parent or guardian if the force used "is not designed to cause or known to create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain or mental distress, or gross degradation." *Id.*

There has been no allegation that Mitchell's alleged use of force was in violation of any provision of the penal code. Rather, the recommendation for suspension was pursuant to an alleged violation of the DOE policy against corporal punishment.