960 P.2d 162

Damian K. OSTROWSKI,
Claimant–Appellant,

v.

WASA ELECTRICAL SERVICES, INC.
and Tokio Marine and Fire Insurance
Company, Employer/Insurance Carrier–
Appellee.

No. 20728.

Intermediate Court of Appeals of Hawai'i.

June 4, 1998.

Certiorari Denied July 9, 1998.

David C. Schutter, and Christopher A. Dias, Honolulu, (David C. Schutter & Associates, of counsel) on the briefs, for claimant-appellant.

Leroy T. Kuwasaki, Jr. and John A. Roney, Honolulu, on the brief for employer/insurance carrier-appellee.

Before BURNS, C.J., and WATANABE and KIRIMITSU, JJ.

KIRIMITSU, Judge.

This appeal involves a dispute over the nature and scope of coverage under the Hawai'i workers' compensation law, Hawai'i Revised Statutes (HRS) chapter 386 (1985).[1] Claimant–Appellant Damian K. Ostrowski (Ostrowski) appeals from the May 20, 1997 Decision and Order (decision and order) of the Labor and Industrial Relations Appeals Board (LIRAB) denying his claim for workers' compensation benefits. Employer–Appellee is Wasa Electrical Services, Inc. (Wasa). Ostrowski argues that the LIRAB erred by: (1) concluding that the drinking party during which he sustained his injury was not an incident of his employment; (2) finding that the after-hours sidewalk drinking party was a social activity that was not sponsored or organized by Wasa; (3) finding that Ostrowski returned to the after-hours drinking party at 6:00 p.m. on his own initia-tive and for purely social reasons; (4) finding that Ostrowski's physical altercation with Lawrence Chang, Jr. (Chang, Jr.) was over Chang, Jr.'s belligerent behavior towards his father, Lawrence Chang, Sr. (Chang, Sr.), and Ostrowski's concern for Chang, Sr.'s safety, and was therefore not related to Ostrowski's employment; and (5) finding and concluding that the drinking party did not in any way "benefit" Wasa.[2]

We disagree with Ostrowski that the LIRAB's pertinent findings of fact were clearly erroneous or that its conclusions of law were wrong. Accordingly, we affirm the LIRAB's decision and order.

## I. BACKGROUND

### a. Factual history

Before or around 1989, Wasa employed Ostrowski as a "field" electrician. On December 29, 1989, Ostrowski began work at 7:00 a.m. at an Ala Moana job site. Around 11:30 a.m., a co-worker informed him that Wasa was sponsoring a New Year's Eve party for its employees, on Wasa's business premises. Ostrowski testified that a foreperson for whom he worked also encouraged him to attend the party, leaving Ostrowski with the impression that attendance was encouraged, if not mandatory.

Ostrowski left the Ala Moana job site early in order to attend the New Year's Eve party, arriving at Wasa's business premises around 1:30 p.m.; the party apparently began at 11:30 a.m. Ostrowski testified that he expected to be paid for a full, eight-hour day, but was paid for only a half-day. Other employees who attended the party were similarly paid for only a half-day of work.

At the party, Wasa provided catered food and soft drinks. No alcoholic beverages

---

1. The facts and workers' compensation hearings for this case occurred between 1989 and 1991. We therefore cite to the statute applicable at that time, which is the 1985 version of Hawai'i Revised Statutes (HRS) chapter 386.

2. Claimant–Appellant Damian K. Ostrowski (Ostrowski) also argues that the Labor and Industrial Relations Appeals Board (LIRAB) erred because (1) Employer–Appellee Wasa Electrical Services, Inc. (Wasa) failed to rebut the pre-sumption of compensability imposed by HRS § 386-85 (1985), see infra n. 5, and (2) public policy favors compensation in cases of workers' compensation. We need not address these issues because we find sufficient evidence to support the LIRAB's findings of fact and conclusions of law that, under the analysis later discussed in this opinion, Ostrowski's injury was not compensable.

were served because of Wasa's company policy prohibiting alcoholic beverages from being served or consumed on its premises,[3] of which policy Ostrowski and other employees were aware.

However, a group of approximately twenty-five to thirty employees, including members of Wasa's management, had assembled on a sidewalk across the street from Wasa's premises to drink beer and alcohol. A large cooler filled with ice and beer was placed on the public sidewalk, as was a couch on which to sit. The beer was purchased with the personal funds of the employees, but the ice was from Wasa's ice machine, and the ice cooler was owned and supplied by Wasa.

During the year or so that Ostrowski was employed by Wasa, there were approximately four similar office-sponsored parties, as well as less formal "pau hana," after-work parties that allegedly occurred at least three times per week. On all such occasions, employees, including management, would consume alcoholic beverages on the sidewalk with arrangements similar to the December 29, 1989 New Year's Eve party. Wasa was aware of this practice and did not prohibit it.[4]

Ostrowski was at the December 29, 1989 party from approximately 1:30 p.m. to 3:15 p.m. He then left the party to pick up his wife and drive home to Aiea. After showering and eating dinner at home, he returned to the sidewalk drinking party at or around 6:00 p.m., taking with him a cooler and eight bottles of beer. By this time, most of the seventy employees from the afternoon party had left, and Wasa's office had officially closed. However, a group of ten to fifteen employees continued to "party" in the sidewalk area across the street from Wasa's premises. This group included Chang, Sr.,

vice-president of the company, his son, Chang, Jr., who was an employee, and other employees.

At or around 7:00 p.m., Chang, Sr. and Chang, Jr. began arguing. Chang, Sr. tried to take away Chang, Jr.'s car keys because he thought his son was too intoxicated to drive. Chang, Jr. then threw his car keys at Chang, Sr. It is undisputed that Ostrowski then tried to intervene, allegedly "for the benefit of everyone [involved]."

Chang, Jr. then began yelling and throwing beer bottles at Chang, Sr. and threw a cooler against a wall. Ostrowski then grabbed Chang, Jr. to stop him from attacking his father. When Chang, Jr. resisted, he and Ostrowski began fighting. Chang, Jr. allegedly punched Ostrowski twice in the face and knocked him into a tile wall and onto the sidewalk. Ostrowski suffered serious head injuries that resulted in a cerebrospinal fluid leak that, as of December 31, 1991, prevented him from returning to work.

### b. *Procedural history*

On October 3, 1990, Ostrowski filed a Form WC-5 claim for workers' compensation benefits. On June 17, 1991, the Director of the Department of Labor and Industrial Relations, Disability Compensation Division, State of Hawai'i (the Director) filed a decision denying workers' compensation benefits to Ostrowski. After Ostrowski appealed the Director's decision, the LIRAB filed its May 20, 1997 decision and order, similarly denying Ostrowski workers' compensation benefits. The LIRAB found, in pertinent part, that:

▮ The evidence shows that the evening drinking party during which [Ostrowski] sustained his injury was not an inci-

---

3. Wasa had posted a sign on its company refrigerator which read:
   SAFETY NOTICE
   ALCOHOLIC BEVERAGES — DRUGS — MARIJUANA
   — FORBIDDEN —
   In the interest of safety, the possession, consumption or use of alcoholic beverages or illegal drugs (including marijuana) is not permitted on this work site or while driving a company vehicle.
   Alcoholic beverages include but are not limited to beer, whiskey, and wine . . . .

Anyone violating this policy will be subject to immediate termination.
   [signed Shigio Wasa]
(Capitals omitted.) Ostrowski admitted that he and other employees had read this sign or knew of the policy.

4. In fact, Ostrowski testified that during these parties, he had often witnessed employees and management carry alcoholic beverages from the outside cooler onto Wasa's premises, though this fact is disputed.

dent of [Ostrowski's] employment. Even though drinking parties similar to the one that occurred on December 29, 1989, may have been held with regularity in the form of [weekly] parties, they took place on a public sidewalk outside of [Wasa's] premises, after work hours, and without [Wasa's] approval or encouragement. Furthermore, the beer consumed at the evening gathering was purchased with the personal funds of the employees. These facts support our·finding that the evening drinking party outside of [Wasa's] premises was a social event that was not an incident of [Ostrowski's] employment. That employees at the evening gathering may have had access to [Wasa's] premises ... or ... that the cooler and ice belonged to [Wasa] do not, in our view, provide sufficient nexus to bring the activity within the orbit of employment.

■ The evidence also shows that [Wasa] did not expressly or impliedly require participation or attendance at either the daytime New Year's party, or the after-hours drinking party, and did not make either activity part of the services of its employees.... Of particular significance was [Ostrowski's] departure from the New Year's party near the end of his work shift to pick up his wife and return home from dinner. [Ostrowski's] departure ... support[s] our finding that ... the Kahikapu Street party at 6:00 p.m., was voluntary and for purely social reasons.

■ Finally, [Ostrowski] has presented no evidence that [Wasa] derived a substantial benefit from the New Year's party or the after-hours drinking party outside of its premises beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.

After entry of the decision and order, Ostrowski filed a timely notice of appeal.

## II. *STANDARD OF REVIEW*

Appellate review of the LIRAB's decision is governed by HRS § 91–14 (1993), which provides in relevant part:

(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

HRS § 91–14(g).

Conclusions of law are reviewed under subsections (1), (2), and (4) of HRS § 91–14(g); findings of fact are reviewed under subsection (5); and an agency's exercise of discretion is reviewed under subsection (6). *Zemis v. SCI Contractors, Inc.*, 80 Hawai'i 442, 445, 911 P.2d 77, 80 (1996) (citation omitted).

Being governed by the Hawai'i Administrative Procedure Act, HRS ch. 91 (1985 & Supp.1992), appeals taken from findings set forth in decisions of the Board are reviewed under the "clearly erroneous" standard. Thus, this court considers whether such a finding is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. The clearly erroneous standard requires this court to sustain the Board's findings unless the court is left with a firm and definite conviction that a mistake has been made.

A conclusion of law (COL) is not binding on an appellate court and is freely reviewable for its correctness. Thus, this court reviews COL *de novo*, under the right/wrong standard.

*Tate v. GTE Hawaiian Tel. Co.*, 77 Hawai'i 100, 102–03, 881 P.2d 1246, 1248–49 (1994)

(citations, brackets, and internal quotation marks omitted).

## III. *DISCUSSION*

This case presents us with a legal issue novel to our jurisdiction: When is an employee entitled to workers' compensation benefits for an injury occurring off-premises, but questionably associated with, a company-sponsored holiday party. In the instant case, the facts do not support an award of workers' compensation benefits. However, we take this opportunity to address this issue because of the common occurrence of the underlying facts.

### A. *Hawai'i's test for workers' compensation benefits.*

#### 1. *HRS § 386-3 (1985).*

The payment of workers' compensation benefits is governed by HRS § 386-3, which provides, in relevant part:

**Injuries covered.** If an employee suffers personal injury either by accident *arising out of and in the course of the employment* or by disease proximately caused by or resulting from the nature of the employment, the employee's employer or the special compensation fund shall pay compensation to the employee or the employee's dependents as hereinafter provided.

Accident arising out of and in the course of the employment includes the wilful act of a third person directed against an employee because of the employee's employment.

(Emphasis added.)

We have traditionally construed HRS § 386-3 liberally, in favor of awarding compensation, because "our 'legislature has de-cided that work injuries are among the costs of production which industry is required to bear.'" *Mitchell v. State*, 85 Hawai'i 250, 255, 942 P.2d 514, 519 (1997) (quoting *Chung v. Animal Clinic, Inc.*, 63 Haw. 642, 649, 636 P.2d 721, 726 (1981)). Further, the paramount purpose of our workers' compensation law is to "'provide compensation for an employee for all *work-connected injuries, regardless of questions of negligence and proximate cause.* Courts should therefore give them a liberal construction in order to accomplish their beneficent purposes.'" *Id.* (quoting *Evanson v. University of Hawaii*, 52 Haw. 595, 600, 483 P.2d 187, 191 (1971)) (emphasis in original). This liberal construction is supported by our legislature's enactment of HRS § 386-85 (1985),[5] which provides that a claim for workers' compensation is presumed to be compensable.[6]

#### 2. *The unitary work-connection test in the context of an employer-sponsored party.*

Our courts have consistently interpreted HRS § 386-3 under the "nexus" test, which provides:

For an injury to be compensable under [HRS § 386-3], there must be a requisite nexus between the employment and the injury. The nexus requirement is articulated in Hawai'i, as in the majority of jurisdictions, on the basis that, to be compensable, an injury must arise out of and in the course of employment.

*Tate*, 77 Hawai'i at 103, 881 P.2d at 1249 (footnote omitted); *see also Mitchell*, 85 Hawai'i at 254, 942 P.2d at 518 (similarly quoting *Tate*); *Zemis*, 80 Hawai'i at 445, 911

---

5. HRS § 386-85 (1985) provides:
  **Presumptions.** In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary:
  (1) That the claim is for a covered work injury;
  (2) That sufficient notice of such injury has been given;
  (3) That the injury was not caused by the intoxication of the injured employee; and
  (4) That the injury was not caused by the wilful intention of the injured employee to injure oneself or another.

6. For a further discussion of why courts generally construe, or should construe, workers' compensation statutes liberally, *see* Christine L. Sommer, *Worker's Compensation and Company Sponsored Events: The High Cost of Employee Morale*, Clev. St. L.Rev. 181, 203–05 (1991) (arguing that compensating employees for recreational injuries should be encouraged under state workers' compensation statutes because such compensation eliminates an employer's exposure to tort liability).

P.2d at 80 (quoting the same); *Smith v. State*, 80 Hawai'i 150, 153, 907 P.2d 101, 104 (1995) (quoting the same).

Interpreting the nexus requirement is the "unitary" test, which states that an injury arises "out of and in the course of employment" when there is a sufficient work connection to bring the injury within the scope of HRS § 386-3. *Tate*, 77 Hawai'i at 103, 881 P.2d at 1249. "[T]he work connection approach simply requires the finding of a causal connection between the injury and any incidents or conditions of employment." *Id.* (citation omitted).

■ Our supreme court, in *Tate*, further interpreted the unitary work-connection test (*Tate* test) as:

> An injury is said to arise in the course of the employment when it [ (1) ] takes place within the period of employment, [ (2) ] at a place where the employee reasonably may be,[7] and [ (3) ] while he or she is fulfilling his or her duties or engaged in doing something incidental thereto.[8]

Larson, *Workmen's Compensation Law* § 22.11 (1978)).

This interpretation is supported by our supreme court's holding in *Chung v. Animal Clinic, Inc.*, 63 Haw. 642, 636 P.2d 721 (1981) and *Pacheco v. Orchids of Hawaii*, 54 Haw. 166, 502 P.2d 1399 (1972), where our supreme court awarded compensation for injuries occurring off of the employer's premises and during non-working hours. Consequently, the first two *Tate* elements do not repeat the first Larson's consideration, as set forth later in this opinion, because under the first Larson's consideration, the injury must have occurred, in particular, *on the work premises* and during a lunch or recreation period.

---

7. We note that the requirement that the employee "reasonably" be at the place of injury and that the injury occur within the "period of employment" under *Tate v. GTE Hawaiian Tel. Co.*, 77 Hawai'i 100, 103–04, 881 P.2d 1246, 1249–50 (1994), does not necessarily require that the employee be on the employer's physical premises during normal working hours in order for the injury to be compensable. As another jurisdiction has stated,

> [c]ompensation is not to be denied merely because the employee's injury occurred off the premises or at a time other than his [or her] regular working hours, but the facts and circumstances of each case will be examined with an eye to ascertaining if the record establishes a nexus or a link between the injury and the employment.

*Beauchesne v. David London & Co.*, 118 R.I. 651, 375 A.2d 920, 922 (1977) (citation omitted). Furthermore, where the injury undisputedly occurred off of the employer's work premises and outside of working hours, we must consider that

> [w]hen seeking for a link by which to connect an activity with the employment, one has gone a long way as soon as one has placed the activity physically in contact with the employment environment, and even further when one has associated the time of the activity somehow with the employment.... Conversely, if the recreational activity takes place on some distant vacant lot, several hours after the day's work has ceased, *some independently convincing association with the employment must be built up to overcome the initial presumption of disassociation with the employment established by the time and place factors.*
> ....
> When the injury occurs off the operating premises and outside working hours, *no single factor should be given conclusive weight in determining whether the injury was work-related....* The employer's liability to provide compensation for the injury must be based upon the quantum of aggregate facts rather than the existence or nonexistence of any particular factor.

*Jackson v. Cowden Mfg. Co.*, 578 S.W.2d 259, 262 (Ky.Ct.App.1979) (emphases added) (quoting

8. There is some question over the application of the "work connection" approach in our jurisdiction. The unitary work-connection test was first established by our supreme court in *Chung*, 63 Haw. at 649, 636 P.2d at 725 where the court addressed the issue of compensability for an employee's death due to a heart attack that occurred after-hours, off-premises, while the employee was jogging. In *Chung*, the supreme court reasoned:

> The work-connection approach rejects the necessity of establishing temporal, spatial, and circumstantial proximity between the injury and employment. Instead, focusing on the injury's origin rather than the time and place of its manifestation, *the work-connection approach simply requires the finding of a causal connection between the injury and any incidents or conditions of employment....* [T]he pertinent nexus is a causal, as opposed to a temporal or spatial one....
> ... [I]n Workmen's Compensation the controlling event is something done *to*, not *by*, the employee, and since the real question is whether this something was an industrial accident, the *origin* of the accident is crucial, and the moment of manifestation should be immaterial.

*Id.* at 648, 636 P.2d at 725 (quoting 1A Larson, *Workmen's Compensation Law* § 29.22 (1979)) (first emphasis added, second emphases in original). The supreme court held that the off-premises injury was compensable.

*Tate,* 77 Hawai'i at 103–04, 881 P.2d at 1249–50 (quoting 1A Larson, *The Law of Workmen's Compensation* § 14.00 (1993)) (footnotes added).

█ In our analysis of the third element of the *Tate* test, we necessarily review considerations (Larson's considerations) that are commonly applied in the context of an employer-sponsored social or recreational event. As Larson states:

Recreational or social activities are within the course of employment when

[(a)] They occur on the premises during a lunch or recreation period as a regular incident of the employment; *or*

[(b)] The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; *or*

[(c)] The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.

2 Larson, *Larson's Worker's Compensation Law* § 22.00 at 5–87 (1997) (emphasis added) [hereinafter Larson].[9]

We adopt the above Larson's considerations in order to interpret the third element of *Tate,* namely, whether or not the injury in question occurred as a duty or incident of employment. Accordingly, each of the above three *Tate* elements must be met in order for compensation to be awarded. Under element three, if either (a), (b), or (c) of the Larson's test is present, or other factual considerations that the court deems relevant, then the injury is an "incident" of the employee's employment activities under *Tate.*

The test must, of course, be liberally construed in favor of the claimant.

Because the *Tate* test is conjunctive, we need only address the third *Tate* element. To that extent, we agree with the LIRAB that the third element of the *Tate* test cannot be met due to any of the following Larson's considerations because Ostrowski's injury: (a) was not incurred "on the premises during a lunch or recreation period as a regular incident of the employment"; (b) was not expressly or impliedly brought by Wasa into the orbit of employment; or (c) did not benefit Wasa. As such, we affirm the LIRAB's ruling.

### B. Application of Larson's Considerations.

The dispositive question before us is whether Ostrowski's return to the after-hours drinking party constituted an incident of his employment under the third *Tate* element. We conclude, as a matter of law, that it did not, and, therefore, affirm the LIRAB's decision and order on this issue.

### 1. The injury did not occur on the premises during a lunch or recreation period as a regular incident of the employment.

█ In analyzing Larson's considerations, we must first ask whether the injury occurred (i) "on the premises," (ii) "during a lunch or recreation period," *and* (iii) "as a regular incident of the employment." In the instant case, we find no causal connection.

Ostrowski's injury undisputedly occurred on the sidewalk outside of Wasa's business premises and thus did not occur "on the premises." The injury also did not occur during a "lunch or recreation period," because it occurred after Ostrowski left the

The first emphasized portion of the above quote has been reiterated in several subsequent supreme court opinions, *see Mitchell v. State,* 85 Hawai'i 250, 254, 942 P.2d 514, 518 (1997); *Zemis v. SCI Contractors, Inc.,* 80 Hawai'i 442, 445, 911 P.2d 77, 80 (1996); *Smith v. State,* 80 Hawai'i 150, 154, 907 P.2d 101, 104 (1995), though the non-emphasized portions have, apparently, been implicitly overruled by the test applied by the supreme court, as quoted above, in *Tate,* 77 Hawai'i at 103–04, 881 P.2d at 1249–50, which *does* consider spatial and temporal considerations. Despite their explicit rejection by our supreme court in *Chung,* spatial and temporal considerations are thus now, apparently, a part of the unitary work-connection test.

This conclusion is supported by the fact that it is extremely difficult to make a determination of compensability without considering temporal and spatial factors, particularly under difficult facts, and in a concededly confusing area of the law. We therefore adopt herein the later test, as set forth above in *Tate.*

9. We have added emphasis to the "or" connectors because "[t]he better rule, and the rule here favored, is that there are at least the three independent links ... by which recreation can be tied to the employment, and if one is found, the absence of the others is not fatal." 2 Larson, *Larson's Worker's Compensation Law* § 22.11 (1997) [hereinafter Larson].

New Year's Eve party, at around 3:15 p.m., and returned to the party at around 6:00 p.m., which was after Wasa's offices had officially closed.[10] At 7:00 p.m., the altercation occurred. Clearly this time period was not during a "lunch or recreation period." [11]

The injury also did not occur as an "incident" of Ostrowski's employment because it occurred for reasons unrelated to Ostrowski's or Chang, Jr.'s employment duties.[12] Rather, it occurred for the purely personal purpose of preventing a drunken son's assault of his father. Consequently, Ostrowski's injury is not compensable under the first Larson's consideration.

### 2. *Employer expressly or impliedly brings the activity within the orbit of employment.*

■ Next, we must consider whether the activity was, nonetheless, expressly or impli-

edly brought onto the orbit of employment by Wasa. In the instant case, Ostrowski argues that because Wasa impliedly condoned the dangerous activity of consuming alcohol just outside of, and accompanying, its formal company party, his injury occurred within the orbit of his employment. We disagree.

Professor Larson sets forth several factors to be considered in regards to an employer's sponsorship of a social or recreational activity, stating:

> When the degree of employer involvement descends from compulsion to mere sponsorship or encouragement, the questions [regarding compensation] become closer, and it becomes necessary to consult a series of tests bearing on work-connection.... Among the questions to be asked are: Did the employer in fact sponsor the event? To what extent was attendance

**10.** Ostrowski urges us to adopt a California court's holding that "once [it is] determine[d] ... that attendance at [a company drinking] party falls within the scope of employment, it follows that when [the employee] returned to his employer's premises to attend that party, he re-entered the scope of employment." *McCarty v. Workmen's Comp. Appeals Bd.*, 12 Cal.3d 677, 117 Cal.Rptr. 65, 69, 527 P.2d 617, 621 (1974). In *McCarty*, an employee was killed when, while returning home from a drinking and gambling party at his office, he drove into a railroad signal pole. The court held this death compensable because the drinking party (1) was on the employer's premises, (2) was customary, (3) the owner-managers participated in it, (4) most of the liquor was supplied by the company, and (5) employees regularly stored beer in the on-premises company refrigerator. *See id.* 12 Cal.3d 677, 117 Cal.Rptr. at 66–67, 527 P.2d at 618–19. The court held that because the employee became intoxicated at his place of employment, and with his employer's obvious sponsorship, his death was compensable because the approved-of intoxication "proximately caused" his death. *Id.* 12 Cal.3d 677, 117 Cal.Rptr. at 67, 527 P.2d at 619.

However, the instant facts are clearly distinguishable from those in *McCarty*. We are faced with the situation where the employer did *not* supply the alcohol, did *not* allow drinking on premises, and the intoxication occurred *off-premises*. These time and place differences are important distinctions. Furthermore, we reject the tort-based, proximate-cause analysis used by *McCarty*. "[P]roximate cause or legal cause is out of place in compensation law" because it is based on theories of fault and foreseeability, whereas workers' compensation law rejects fault and foreseeability, awarding compensation mere-

ly if any injury, caused by any unforeseeable series of events, arises out of the course and scope of an employee's employment. Larson at § 6.60. Consequently, we decline to adopt *McCarty* as part of our state's jurisprudence.

**11.** An example of a "lunch or recreation period" is a "coffee break," as discussed in *Pacheco v. Orchids of Hawaii*, where our supreme court held that an injury during a company-authorized "coffee break" was compensable. 54 Haw. at 68–70, 502 P.2d at 1401–02. *See infra* Section B.3 of this opinion (discussing *Pacheco* in the context of a "benefit" to an employer).

**12.** Ostrowski argues that the altercation between he and Lawrence Chang, Jr. (Chang, Jr.) was related to Ostrowski's course and scope of employment because Wasa condoned the sidewalk drinking party that led to Chang, Jr.'s intoxication, which led to Chang, Jr.'s alleged assault of Ostrowski. However, this tenuous connection to work is not enough to establish the alleged assault as one relating to Ostrowski's employment activities, because it is the motive and subject matter of the assault that determine whether or not it is work-related, *Zemis*, 80 Hawai'i at 446, 911 P.2d at 81, not the employer's questionable support of an off-premises, after-hours drinking activity. We see no link to Ostrowski's employment from the injuries he received from Chang, Jr., concededly because Chang, Jr. was fighting with his father over whether or not he was too drunk to drive home. *See id.* (stating that "where an employee is injured by the wilful act of a third person, a causal connection ... may be found if the wilful act ... was 'directed against [the] employee *because of the employee's employment*' ").

really voluntary? Was there some degree of encouragement to attend in such factors as taking a record of attendance, paying for the time spent, requiring the employee to work if he did not attend, or maintaining a known custom of attending?

Larson at § 22.23; *see also Grant v. Brownfield's Orthopedic & Prosthetic Co.,* 105 Idaho 542, 671 P.2d 455, 456–460 (1983) (interpreting this test in favor of the claimant); *Beauchesne v. David London & Co.,* 118 R.I. 651, 375 A.2d 920, 921–22 (1977) (setting forth an identical test in favor of the claimant). In interpreting the above considerations, we also consider that,

> [i]n view of the employee's subordinate position, compulsion may be direct or indirect, and may range in degree from a mere suggestion to a direct order. It may even arise from encouragement only. Perhaps such nuances would not generally be considered as being within the field of compulsion in the ordinary sense of the term, but allowance must be made for them in the relationship between employer and employee, otherwise the employer has directive authority without a corresponding responsibility. And if the slightest degree

of compulsion is practiced by employer then it must be presumed that the activity engaged in is incidental to the interests of the employer and therefore a part of the employee's work.

*Jackson v. Cowden Mfg. Co.,* 578 S.W.2d 259, 263 (Ky.Ct.App.1978); *see also Hughes Aircraft Co. v. Workers' Comp. Appeals Bd.,* 149 Cal.App.3d 571, 574, 196 Cal.Rptr. 904, 906 (1983) (applying a "reasonable expectancy" test that measures an employee's subjective belief in compulsion against an objective standard);[13] *Grant,* 671 P.2d at 458–59 (Bakes, J., dissenting) (stating that an employee's inferences from custom and an employer's verbal encouragement are enough to constitute compulsion to attend a voluntary, after-hours company Christmas party); *Beauchesne,* 375 A.2d at 922 (stating that attendance need not be mandatory but may be inferred by the employee to find employer compulsion).

■ In the instant case, the LIRAB found that:

> ■ The evidence also shows that [Wasa] did not expressly or impliedly require participation or attendance at either the daytime New Year's party,[14] or the after-hours

---

**13.** In *Hughes Aircraft Co. v. Workers' Comp. Appeals Bd.,* 149 Cal.App.3d 571, 574, 196 Cal.Rptr. 904, 906 (1983), the California court applied a test for compulsion based on an employee's "reasonable expectancy" of attending the employer-sponsored party. The court set forth this test to interpret California's workers' compensation statute, which provides that only off-duty recreational, social, or athletic activities that are a " 'reasonable expectancy of, or are expressly or impliedly required by, the employment' " are compensable. *Id.* at 573 n. 1, 196 Cal.Rptr. at 906 n. 1 (quoting California's amendment). Hawai'i has no such statutory provision, though we believe that one would be helpful. The court in *Hughes Aircraft* was thus able to adopt a judicially-created standard to apply in situations similar to that in the instant case, stating that:

> [T]he law looks to the expectations of the person who is being protected and measures his subjective understanding against a neutral and unbiased standard. It is our view that the test of "reasonable expectancy of employment" consists of two elements: (1) whether the employee subjectively believes his or her participation in an activity is expected by the employer[;] and (2) whether that belief is objectively reasonable.
> . The effect of this test is to recognize only expectations which are objectively reasonable.

Stated another way, the employer is protected from liability for injuries where an employee's belief that he or she is expected to participate in an activity is unreasonable. The burden rests upon an employer to insure that no subtle or indirect pressure or coercion is applied to induce involuntary participation by an employee.

*Id.* at 574, 196 Cal.Rptr. at 906 (citation, internal quotation marks, and ellipses omitted). Neither party argues this test in their briefs. We note it to illustrate the necessity for legislative guidance in this area.

**14.** The LIRAB's finding that the New Year's Eve party was not expressly or impliedly condoned by Wasa *is* clearly erroneous. This is because, first, Wasa supplied all of the food and drink for the party, held it on its premises, during working hours, and gave all of its field employees a half-day off (albeit unpaid) to attend the party. Furthermore, Ostrowski testified that he felt compelled to attend the party because his foreperson had implied that he should. Ostrowski's feeling of compulsion is supported by the fact that Wasa's company-sponsored parties were customarily attended by all or most of its employees. These factors certainly establish that Wasa "expressly or impliedly condoned" the initial New Year's Eve party.

drinking party, and did not make either activity part of the services of its employees.... Of particular significance was [Ostrowski's] departure from the New Year's party near the end of his work shift to pick up his wife and return home from dinner. [Ostrowski's] departure ... support[s] our finding that ... the Kahikapu Street party at 6:00 p.m., was voluntary and for purely social reasons.

(Footnote added.)

Even applying the above liberal standards to the instant case, the LIRAB's findings of fact were not clearly erroneous. First, Wasa did not "actually sponsor" the after-hours drinking party. It did not expressly approve of it, provide the premises, or provide the alcoholic beverages. In fact, Wasa prohibited the consumption of alcoholic beverages on its premises, which is why the employees drank on the sidewalk outside.

Second, the LIRAB's finding of fact that attendance at the after-hours drinking party was voluntary does not appear clearly erroneous. In fact, most of Wasa's seventy employees had already departed, including at least half of the original participants in the sidewalk drinking party. Thus, attendance at the after-hours party was most likely not mandatory or even encouraged.

Third, no attendance was kept, the employees at the after-hours party were not paid for their time there or otherwise compensated for their participation, and though attendance was allegedly customary, there is no evidence to indicate that it was customary *after working hours*, or after an accompanying party had ended. We conclude that after the employer-sponsored New Year's Eve party ended and normal working hours ceased, and Wasa closed its doors and most of its employees, departed, Wasa ceased to expressly or impliedly require participation, or "sponsor," the after-hours drinking party. Furthermore, it is difficult to believe that Ostrowski felt "compelled," for reasons related to his employment, to return to the after-hours drinking party, or that his injury was otherwise a result of an activity expressly or impliedly brought by Wasa within the orbit of Ostrowski's employment.[15]

Consequently, considering the totality of the circumstances, we conclude that Wasa did not expressly or impliedly bring the after-hours drinking party within Ostrowski's orbit of employment.

### 3. *Benefit to the employer.*

■ As the final consideration in our analysis, we address whether the after-hours drinking party conferred any type of benefit upon Wasa.

Generally, a "benefit" to an employer in the social or recreational context includes the benefit a business gains from having its employees entertain clients, the participation of employees in business-related clubs and organizations or social activities, or, in the case of company picnics or office parties, when the employer takes the opportunity to award merit awards or give a pep talk at the party. Larson at § 22.31. A benefit in the recreational context may also include receipts or

Second, "an injury is deemed to be causally connected to an incident or condition of employment, and therefore compensable, if it occurs during recreational and social activities regularly engaged in on an employer's premises, with the employer's approval or encouragement." *Tate*, 77 Hawai'i at 104, 881 P.2d at 1250. In establishing this rule, the *Tate* court cited with approval several cases that confirmed that an injury occurring on an employer's premises, for an activity approved of by the employer, is presumed compensable. *See id.* (citing *McNamara v. Town of Hamden*, 176 Conn. 547, 398 A.2d 1161 (1978); *Mack Trucks, Inc. v. Miller*, 23 Md.App. 271, 326 A.2d 186 (1974), *aff'd* 275 Md. 192, 338 A.2d 71 (1975); *Henry v. Lit Bros.*, 193 Pa.Super. 543, 165 A.2d 406 (1960)). Larson further assures that "the presence of the activity on the premises is of great importance" in establishing whether the activity was a duty or incident of employment. Larson at § 22.11. Consequently, the on-premises, during-working-hours- New Year's Eve party was incidental to Ostrowski's employment.

However, this error does not change the outcome of the instant case, because the LIRAB's findings of fact in regards to the after-hours drinking party are not clearly erroneous.

15. We find it persuasive that Wasa's employees used Wasa's cooler to store the alcoholic beverages and used Wasa's ice, and that upper-management attended the after-hours drinking party. However, in light of the other considerations discussed above, these factors are not enough to constitute "express or implied consent" by Wasa.

favorable advertising received from a company-sponsored team. *Id.* at § 22.32.

However,

[a]lthough some courts have found sufficient employer benefit from increased employee morale and good will, *a majority of the courts have held that benefit to an employer through increased employee morale and efficiency is not alone enough to bring a recreational activity within the course of employment.* As Larson points out, all recreational activity tends to improve employee efficiency and morale whether work-related or not. Such "vague and general benefit" is not sufficient in itself to bring a recreational activity within the course and scope of employment.

*Jackson,* 578 S.W.2d at 264 (citations omitted) (emphasis added); *see also* Larson at § 22.33 ("It can be taken as the majority view that these morale and efficiency benefits are not alone enough to bring recreation within the course of employment.").[16]

Our jurisdiction has only addressed the issue of a work-related benefit to the employer in *Pacheco v. Orchids of Hawaii,* 54 Haw. 66, 502 P.2d 1399 (1972), where the supreme court examined whether an injury resulting from an auto accident that occurred off-premises, during an employee's coffee break, was compensable. *Id.* at 68, 502 P.2d at 1400. The employee in *Pacheco* was on an authorized coffee break when she joined some co-employees to go to the bank in order to cash her check. The court placed merit in the facts that it was a Friday afternoon, and the authorized coffee-break was the only time before the weekend that the employee could go to the bank. The car in which the employee was riding was struck by another car, approximately three blocks away from the employer's premises, fatally injuring the employee.

The court held that the employer gained a "benefit" from the coffee break because

a refreshed employee is often a more productive one. . . . An employer may derive substantial benefits from an employee who is allowed time away from the job to accomplish *pressing personal business.* Injuries occasioned by employees pursuing *necessary personal matters* off employer's premises are compensable in our view as work-connected, especially if the employer acquiesces in such practices.

*Id.* at 69–70, 502 P.2d at 1401 (emphases added).

*Pacheco* does not define a benefit to an employer in general, but seems to apply only to the fact-specific situation where an employee, while on an *authorized break,* pursues "necessary personal matters." *Pacheco* illustrates the fine line between a benefit to an employer that is tangible, and one that is intangible; in *Pacheco,* the benefit was something greater than increased employee morale, because it was authorized or encouraged by the employer and of a "pressing" nature to the employee.

We believe that any "benefit" received in the instant case was, however, too intangible to be determinative in this case, because we find no extra factors that would raise it above some intangible—and questionable—benefit to employee morale and efficiency. In fact, while it stretches the mind to ascertain what true benefit the after-hours drinking party conferred upon Wasa, it is not difficult to see

---

**16.** However, we note that Larson does not exclude the possibility of coverage simply because no benefit to the employer is found.

[T]he absence of these [morale and efficiency] benefits is not in itself adequate to exclude recreation from coverage if other elements favoring coverage are sufficiently persuasive. Thus, in a Connecticut case, the court held that injury sustained during a game of ping-pong on the employer's premises before the start of the work day was compensable. The employees had purchased the equipment. The commissioners had actually found that there was no employer benefit, a finding which the court did not disturb. It held, however, that the activity was covered because it was on the premises, was reasonably incidental to the employment, and was both permitted and regulated by the employer. In the circumstances, absence of employer benefit was not fatal, particularly since it was not realistically possible to evaluate employer benefit in cases of this kind.

Larson at § 22.33 (footnote omitted) (citing *McNamara* ). This commentary highlights why the third *Tate* element contains three considerations (incident of employment, employer approval, or employer benefit) in providing compensation.

that such a party did not benefit Wasa, in the employment context, in any way.

## IV. *CONCLUSION*

Looking at the quantum of aggregate facts, we decide that the after-hours drinking party was not (a) causally connected to any duties or incidents of Ostrowski's employment, (b) expressly or impliedly condoned by Wasa, or (c) a benefit to Wasa. As such, the LIRAB's findings on this issue were not clearly erroneous as a matter of fact, or wrong as a matter of law.

"While the line may be hard to draw between what is or is not compensable, there is ... a difference between employment itself, an incident of employment and an incident of an incident of employment." *Pacheco*, 54 Haw. at 78, 502 P.2d at 1405–06 (Levinson, J., dissenting) (quoted in *Tate*, 77 Hawai'i at 108, 881 P.2d at 1254). We believe that Ostrowski's injury was an "incident of an incident of employment"; it was simply too far removed from the necessary elements of time, place and other independent factors to find the employer liable for compensation. Accordingly, we affirm the LIRAB's May 20, 1997 decision and order.