12 P.3d 357

Richard J. **KORSAK**, Claimant–Appellant,

v.

**HAWAI'I PERMANENTE MEDICAL GROUP, INC.**, Employer–Appellee, Self–Insured,

and

**Special Compensation Fund**, Appellee.

No. 21799.

Intermediate Court of Appeals of Hawai'i.

Nov. 10, 1999.

Reconsideration Denied Dec. 2, 1999.

Certiorari Granted Jan. 4, 2000.

David M. Robinson (Robinson & Chur), on the briefs, for claimant-appellant.

Clyde Umebayashi and Muriel M. Taira (Kessner Duca Umebayashi Bain & Matsuna-ga), on the briefs, for Employer-Appellee, Self–Insured.

Frances E.H. Lum and Nelson T. Higa (Deputy Attorneys General), on the briefs, for appellee.

BURNS, C.J., WATANABE, and LIM, JJ.

Opinion of the Court by LIM, J.

Claimant–Appellant Richard J. Korsak (Korsak) appeals the July 15, 1998 decision and order of the Labor and Industrial Relations Appeals Board (the Board) which denied workers' compensation for his disabling low back condition. We reverse because his employer failed to produce substantial evidence which expressly, directly, and specifically rebutted the presumption of compensability.

### FACTS

Korsak worked as a physician for Employer–Appellee Hawai'i Permanente Medical Group, Inc. (Kaiser). On November 16, 1992, he sustained a compensable injury to his right knee when he slipped and fell in Kaiser's hospital parking lot.

Following surgery on his right knee, Korsak began a course of physical therapy. He was seen three times in February 1993 by a physical therapist specializing in knee problems. Korsak claims he also attended a physical therapy session in early March, during which he felt sciatic (of, relating to, or situated near the hip) pain. Korsak contends he exacerbated a preexisting low back condition as a result of this March 1993 physical therapy session.

It is undisputed that Korsak has a significant history of low back problems. He underwent two back surgeries in the 1970's and was involved in an automobile accident in 1989 in which he fractured his back and herniated a disc.

After the alleged March 1993 physical therapy session, Korsak's low back condition made it impossible for him to continue work as a physician. He took an unscheduled retirement on January 14, 1994.

On March 4, 1993, Kaiser filed a WC–1 report for Korsak's knee injury.

On July 30, 1994, Dr. Roy Sam, a former chief of physiatry[1] at Kaiser and Korsak's associate at work, examined Korsak in connection with a Social Security Administration evaluation. Dr. Sam initially noted that Korsak injured his right knee and severely aggravated his low back problem in the 1992 fall.

> In 1992 the patient was walking in the Kaiser Moanalua Hospital parking lot, when he slipped on oil and injured his right knee. The patient had a right medical meniscus tear and severely aggravated his back problem. He had a medial meniscectomy in February of 1993 by Dr. Frank Uhr.

Dr. Sam went on to opine, however, that Korsak exacerbated his low back condition during physical therapy.

> Postoperatively the patient went to physical therapy and the sports therapist stretched his leg during pulling the right leg over the left. This resulted in a severe strain of the sciatic nerve causing him to have severe pain in the leg. The patient had epidural blocks and morphine blocks by Dr. Robinson, about four blocks in all. The patient was not helped by these injections.

On October 24, 1994, Korsak added a workers' compensation claim for his low back condition, stating that he exacerbated this condition while doing physical therapy for his work-related knee injury. Korsak did not claim that he suffered additional low back injury during the November 16, 1992 fall. The State Special Compensation Fund was made a party to the case pursuant to Hawai'i Revised Statutes (HRS) § 386–33 (1993).[2]

On October 17, 1995, Dr. Lee Silver performed a records review of Korsak's medical history at the behest of the Director of the Department of Labor and Industrial Relations (the Director).

By decision and order dated December 22, 1995, the Director awarded benefits only for the injury to Korsak's right knee, finding that he did not sustain a compensable back injury during physical therapy for the November 16, 1992 fall.

In a January 4, 1996 letter to the Director, written at Korsak's request, Dr. Sam further opined that "[t]here is no doubt that the most of the sciatica and back pain incurred in March 1993 during a physical therapy session was the final precipitating event that caused his medical retirement."

By letter dated January 9, 1996, Korsak requested reconsideration by the Director or, in the alternative, an appeal to the Board of the Director's December 22, 1995 decision and order. The Director denied reconsideration but deemed the letter an appeal to the Board.

On November 27, 1996, Dr. James Langworthy performed, at Kaiser's request, a records review of Korsak's medical history.

**1.** Physiatry is a branch of medicine that deals with the diagnosis and treatment of disease and disability by physical means, such as radiation, heat, cold or electricity. Webster's Third New International Dictionary at 1706–07.

**2.** Hawai'i Revised Statutes (HRS) § 386–33 (1993) reads in pertinent part:

> **§ 386–33 Subsequent injuries which would increase disability.** (a) Where prior to any injury an employee suffers from a previous permanent partial disability already existing prior to the injury for which compensation is claimed, and the disability resulting from the injury combines with the previous disability, whether the previous permanent partial disability was incurred during past or present periods of employment, to result in a greater permanent partial disability or in permanent total disability or in death then weekly benefits should be paid as follows:
> (1) In cases where the disability resulting from the injury combines with the previous disability to result in greater permanent partial disability the employer shall pay the employee compensation for the employee's actual permanent partial disability but for not more than one hundred four weeks; the balance if any of compensation payable to the employee for the employee's actual permanent partial disability shall thereafter be paid out of the special compensation fund; (2) In cases where the disability resulting from the injury combines with the previous disability to result in permanent total disability the employer shall pay the employee for one hundred four weeks and thereafter compensation for permanent total disability shall be paid out of the special compensation fund[.]

The Board issued its decision and order on July 15, 1998, affirming the Director's denial of compensation for Korsak's low back condition. The Board made the following relevant findings of facts and conclusions of law:

### FINDINGS OF FACT

8. There is a factual dispute on the issue of whether Claimant exacerbated his low back during PT [physical therapy] for his right knee. Even if Claimant developed right sciatica while performing PT for his right knee, however, we do not accept Claimant's contention that the PT incident caused his current low back condition.

9. . . . .

We accept Drs. Silver's and Langworthy's opinions over that of Dr. Sam, regarding the causation of Claimant's current low back condition.

. . . .

According to Dr. Silver, the cause of Claimant's continued low back pain is the natural progression of his spinal condition which pre-existed the November 16, 1992 work injury.

According to Dr. Langworthy, the cause of Claimant's current back condition is a combination of his earlier herniated disc in the 1970s with two surgeries at that time, combined with a compression fracture and herniated disc in the lower thoracic region from the 1989 [motor vehicle accident] MVA.

While Drs. Silver's and Langworthy's reports do not address the issue of whether Claimant exacerbated his low back during PT for his right knee, we note that their reports did review Dr. Sam's report dated July 30, 1994, which referenced the alleged PT incident.

10. We find that Claimant's current low back condition is the result of the natural progression of his pre-existing low back condition.

### CONCLUSIONS OF LAW

1. We conclude that Claimant's low back condition is not a compensable consequence of the November 16, 1992 work injury, because Claimant's current low back condition is not causally related to his November 16, 1992 work injury. While Claimant contends that he permanently aggravated his low back condition during PT for his compensable knee injury, we have found that Claimant's current low back condition is due to his pre-existing low back problems.

On August 7, 1998, Korsak filed a timely notice of appeal from the Board's July 15, 1998 decision and order.

### DISCUSSION

Korsak argues three points of error, as follows:

(1) The Board erred in concluding that his low back condition is not a compensable consequence of the November 16, 1992 work injury.

(2) The Board erred in accepting Dr. Silver's and Dr. Langworthy's opinions over that of Dr. Sam, regarding the causation of his current low back condition.

(3) The Board erred in not accepting his contention that the physical therapy incident caused his current low back condition.

We address Korsak's first point of error, as it subsumes the two others.

The dispositive issue in this appeal is whether the Board erred in its ultimate decision that Korsak's low back condition was not a compensable consequence of the November 16, 1992 work injury. Upon review of the record and relevant case law, we conclude that the Board's decision was not supported by substantial evidence and was therefore clearly erroneous.

 We review challenges to ultimate decisions of compensability under the "clearly erroneous" standard. *Tate v. GTE Hawaiian Telephone Co.*, 77 Hawai'i 100, 102–03, 881 P.2d 1246, 1248–49 (1994). "Thus, [the appellate] court considers whether such a finding is clearly erroneous in view of the reliable, probative, and substantial evidence in the whole record." *Id.*

As a general rule, injury resulting from treatment for a compensable work injury is

regarded as a compensable product of the original injury. 1 Mod. Work. Comp. (CBC) § 116:12 (1993).

The Board concluded, however, that Korsak's low back condition did not result from physical therapy treatment for his November 16, 1992 work injury. The Board concluded instead that his low back condition was due to his preexisting low back problems.

Korsak essentially argues that the Board's misapplication of the statutory presumption of compensability in HRS § 386–85(1)[3] was "clearly erroneous."

HRS § 386–85(1) (1985) creates a statutory presumption of compensability (the presumption). The presumption imposes upon the employer the burden of going forward with the evidence and the burden of persuasion. *The employer may overcome the presumption only with substantial evidence that the injury is unrelated to the employment.* Evidence, to be substantial, must be credible and relevant. *Tate,* 77 Hawai'i at 107, 881 P.2d at 1253 (internal quotation marks and citations omitted) (emphasis added). Accordingly, Korsak contends that Kaiser failed to adduce "substantial evidence" to rebut this presumption of compensability. Kaiser, on the other hand, claims that it provided such evidence in the form of medical opinions from Dr. Silver and Dr. Langworthy.

The Hawai'i Supreme Court, in a case analogous to this one, addressed the issue of what type of evidence constitutes "substantial evidence" to rebut the presumption of compensability. *Akamine v. Haw'n Packing & Crating Co.,* 53 Haw. 406, 495 P.2d 1164, (1972).

Edward Akamine died after collapsing while pushing a loaded handtruck at work. His dependents filed a claim for worker's compensation. His employer presented evidence in the form of medical testimony that his preexisting pathological condition was the sole cause of death. The Board denied compensation based on this evidence, reasoning that his death was due to preexisting cardiovascular disease and not attributable to employment.

The supreme court reversed, however, holding that generalized medical opinion concerning the cause of an injury does not constitute "substantial evidence" to rebut the presumption of compensability.

For a medical man may give a generalized opinion that there was no connection between an incident at work and a heart attack, and in his own mind, may mean thereby that a pre-existing pathological condition was the overwhelming factor in bringing about the attack and that the part played by the work was insignificant. But, while it may be sound medically to say that the work did not 'cause' the attack, it may be bad law, because, in general, existing law treats the slightest factor of aggravation as an adequate 'cause.'

*Id.* at 410, 495 P.2d at 1167 (internal quotation mark and citations omitted).

Accordingly, "[t]he primary focus of the medical testimony should have been a discussion on whether the employment effort, whether great or little, in any way aggravated Mr. Akamine's heart condition which resulted in his death." *Id.* at 412, 495 P.2d at 1168.

In this case, the evidence the Board relied on in denying worker's compensation for Korsak's low back condition was, similarly, not "substantial."

■ Kaiser offered as evidence medical opinions by Drs. Silver and Langworthy in the form of medical reports dated October 17, 1995, and November 27, 1996, respectively. In these reports, Drs. Silver and Langworthy gave generalized medical opinions regarding the cause of Korsak's low back pain. The opinions are as follows:

Dr. Silver:

It is my own opinion that the actual cause of his continued pain is the natural pro-

---

**3.** HRS § 386–85(1) (1993) provides in pertinent part:

§ 386–85 Presumptions. In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary:

(1) That the claim is for a covered work injury[.]

gression of his spinal condition which pre-existed the industrial accident of November 16, 1992.

Dr. Langworthy:

The cause of the patient's back condition is a combination of his earlier herniated disc in the 1970s with two surgeries at that time combined with a compression fracture and herniated disc in the lower thoracic region in a motor vehicle accident in 1989.

Kaiser contends that these medical opinions constitute substantial evidence to rebut the presumption, because they opine that the cause of Korsak's back pain was his preexisting back condition.

Pursuant to *Akamine,* however, such generalized medical opinions do not constitute "substantial evidence." Rather, the focus of the medical reports, if they were to be considered adequate in rebuttal, should have been whether the March 1993 physical therapy session in any way exacerbated Korsak's existing low back condition, as he alleged and as was statutorily presumed.

In *Tate,* a more recent Hawai'i Supreme Court pronouncement, the court stated that "[t]he employer may overcome the presumption only with substantial evidence that the injury is unrelated to the employment." *Tate,* 77 Hawai'i at 107, 881 P.2d at 1253 (citing and following *Akamine*).

The doctors' reports did not expressly, directly and specifically address the presumption, as required by *Akamine.* The doctors' opinions did not even impliedly address the presumption.

The dispositive implication was drawn by Kaiser in argument, and accepted by the Board, solely by virtue of the mute and equivocal fact that both doctors had reviewed Dr. Sam's July 30, 1994 report referencing the physical therapy etiology. Thus, their opinions do not provide "sufficient evidence" to rebut the presumption of compensability. The record is otherwise devoid of material medical evidence regarding the physical therapy etiology.

The Board, in its finding of fact, acknowledges that Korsak may have developed pain during a physical therapy session, stating that, "[e]ven if Claimant developed right sciatica while performing PT [physical therapy] for his right knee, however, we do not accept Claimant's contention that the physical therapy incident caused his current low back condition."

The Board, in effect, assumed that Korsak did not fabricate the physical therapy incident, as Kaiser has insinuated. In doing so, the Board focused the appeal squarely on the issue of exacerbation. Under these circumstances, our consideration is confined to the question whether the Board correctly applied the presumption of compensability to facts which are basically undisputed, the contents of the medical opinions of Silver, Langworthy, and Sam. Under *Akamine,* we decide that the Board did not.

We hold, therefore, that the Board's ultimate decision, that Korsak's low back condition was not a compensable consequence of the November 16, 1992 work injury, was "clearly erroneous" in light of the "reliable, probative, and substantial evidence in the whole record." *Tate,* 77 Hawai'i at 103, 881 P.2d at 1249.

Our holding is in accordance with well-established case law governing worker's compensation claims. As we have stated, "[w]e have traditionally construed HRS § 386-3 liberally, in favor of awarding compensation, because our legislature has decided that work injuries are among the costs of production which the industry is required to bear." *Ostrowski v. Wasa Elec. Services, Inc.,* 87 Hawai'i 492, 496, 960 P.2d 162, 166 (App. 1998) (internal quotation marks and citations omitted). *See also Mitchell v. State,* 85 Hawai'i 250, 255, 942 P.2d 514, 519 (1997); *Chung v. Animal Clinic, Inc.,* 63 Haw. 642, 649, 636 P.2d 721, 726 (1981).

In addition, "[t]his liberal construction is supported by our legislature's enactment of HRS § 386-85 (1985), which provides that a claim for workers' compensation is presumed to be compensable." *Ostrowski,* 87 Hawai'i at 496, 960 P.2d at 166.

## CONCLUSION

Because the operative facts "are not in dispute; and the undisputed facts are not

sufficient, as a matter of law, to constitute substantial evidence to rebut the presumption[,]" we reverse and remand for determination of compensation and apportionment for Korsak's current low back condition. *Akamine,* 53 Haw. at 415, n. 7, 495 P.2d at 1170.