# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MORRIS JAMES LLP,           )
                            )
          Appellant,        )
                            )
     v.                     )     C.A. No. N17A-08-005 FWW
                            )
                            )
                            )
WILLIAM WELLER,             )
                            )
          Appellee.         )

Submitted: December 11, 2017
Decided: March 29, 2018

### OPINION AND ORDER

On Appeal from the Industrial Accident Board:
**REVERSED.**

Scott R. Mondell, Esquire; Elissa A. Greenberg, Esquire; Elzufon Austin Tarlov & Mondell, PA, 300 Delaware Avenue, Suite 1700, Wilmington, Delaware 19801; Attorney for Appellant Morris James LLP.

Gary S. Nitsche, Esquire; William R. Stewart, Esquire; Weik, Nitsche & Dougherty, 305 North Union Street, Second Floor, P.O. Box 2324, Wilmington, Delaware 19899; Attorneys for Appellee William Weller.

**WHARTON, J.**

## I. INTRODUCTION

The Court revisits this case on appeal after remand. Morris James LLP ("Morris James") appeals the second decision of the Industrial Accident Board ("Board") dated August 1, 2017. Morris James contends that the Board erred when it found that Appellee William Weller's ("Weller") injury, which he sustained while playing on an employee softball team, occurred within the course and scope of employment. It also argues that the Board erred when it allowed Weller to present new evidence outside the scope of the remand proceeding. This Court reversed the Board's initial decision and remanded the matter to the Board to apply the correct legal standard to its factual findings and to take into account the appropriate considerations when determining whether Morris James received a substantial, direct benefit from having a softball team.

In this appeal, the Court must determine whether the Board's decision is supported by substantial evidence and free from legal error. Upon consideration of the pleadings before the Court and the record below, the Court finds that the Board's decision is neither supported by substantial evidence, nor free from legal error. Accordingly, the Board's decision is **REVERSED**.

## II. FACTUAL AND PROCEDURAL CONTEXT[1]

---

[1] The Court incorporates the Factual and Procedural Context section from its previous decision, *Morris James LLP v. Weller*, 2017 WL 1040713 (Del. Super.

2

On May 25, 2017, prior to the remand hearing, Morris James moved in limine to limit the remand hearing to what it argued was the specific, problematic issue addressed in this Court's decision: whether Morris James derived a substantial benefit from the softball team.[2] According to Morris James, new evidence or witness testimony should be restricted to that issue only.[3] Weller responded that he was entitled to introduce new evidence because the entire case was remanded and application of the correct legal test required analysis of all factors.[4] The Board initially disagreed with Weller, finding that a party's ability to introduce new evidence at a remand hearing is limited to those issues identified as error or problematic by the appellate court.[5] The Board concluded that the specific issue on remand was whether the Morris James derived a substantial benefit from the softball team.[6]

The Board held the remand hearing on May 31, 2017.[7] At the start of the proceedings Weller moved to re-argue the limiting order.[8] Weller argued that the

Ct. Mar. 16, 2017), and supplements those facts with additional relevant facts from the hearing on remand.

[2] Appellant's Opening Br., D.I. 7, Ex. D.

[3] *Id.*

[4] *Id.* at 21-22.

[5] Appellant's Opening Br., D.I. 7, Ex. E.

[6] *Id.*

[7] Appellant's Opening Br., D.I. 7, Ex. G.

[8] *Id.* at 4-6.

language of the Court required the Board to apply "the *Dalton* factors, not factor."[9] Therefore, new evidence and witnesses could be offered on all pertinent factors. Morris James maintained its previous position that remand was limited to the problematic issue identified by the Court.[10] The Board reversed itself and allowed Weller's new evidence and witnesses, but noted that the substantial benefit factor was the "key factor that the judge wanted [the Board] to look at" among all the *Dalton* factors.[11]

Teresa Atwell ("Atwell"), an employee in Morris James' Accounting Department, testified at the remand hearing.[12] She stated that she was injured twice while playing softball for Morris James.[13] In each instance she was told by Morris James to submit her claim under workers' compensation, and in both times her claim was accepted.[14] Atwell also testified that she felt pressured to play softball.[15] In order to field a team for a game each team needed to have three female players.[16] As there were not many female players she felt obligated to play and, after agreeing to play, was told she needed to be there on occasion.[17]

---

[9] *Id.* at 5-6.
[10] *Id.* at 9.
[11] *Id.* at 11.
[12] *Id.* at 51.
[13] *Id.* at 53.
[14] *Id.*
[15] *Id.* at 54-55.
[16] *Id.*
[17] *Id.*

Jamie Dawson ("Dawson"), a paralegal at Morris James, confirmed coverage of Atwell's injuries under workers' compensation.[18] She also testified to the pressure she felt to play softball.[19] Dawson stated that she would be "haggled" by her supervisors at work if she did not participate,[20] and that pressure to play came from as high up as the Executive Director Herweg.[21] The pressure to play was a reason she no longer participated.[22]

Eric Monzo ("Monzo"), an equity partner at Morris James in Weller's department, testified at the remand hearing before the Board.[23] Mr. Monzo stated that employees were encouraged to play softball.[24] He further added that during job interviews he inquired whether a candidate played softball.[25] Monzo also testified about the benefit to the Morris James. He believed that the softball games fostered strong relationships within the legal community and were a beneficial form of social engagement.[26] However, Monzo did not believe Morris James benefitted economically, through new clients or new business, from the softball games.[27]

---

[18] *Id.* at 66.
[19] *Id.* at 67-69.
[20] *Id.* at 68-69.
[21] *Id.* at 67.
[22] *Id.* at 66.
[23] *Id.* at 21.
[24] *Id.* at 24-25, 27.
[25] *Id.* at 49.
[26] *Id.* at 37.
[27] *Id.* at 43-45.

Sherry Perna ("Perna"), Morris James' Executive Director, Controller, and softball coach, testified that she regularly encouraged softball participation.[28] She sent a firm-wide e-mail gauging interest at the beginning of each season,[29] ensured there was enough people to field a team for each game,[30] and inquired whether job candidates played softball.[31] Perna also testified that the softball events benefitted Morris James as a team building exercise, "it helps people get together" and "learn about other people that they work with."[32] Other than increased morale, Perna did not believe Morris James received any other benefit from the softball team.[33] Additionally, Perna testified that Morris James allows non-employees to play on the team, including other attorneys and vendors.[34]

On August 1, 2017, the Board issued a new decision concluding that Weller's injury occurred in the course and scope of his employment.[35] The decision found that Weller met his burden of proof by establishing the second and third factors of the *Dalton* standard, which are:

> (2) the employer, by expressly or impliedly requiring participation, or by making the activity part of the services of the employee, brings the activity within the orbit of

---

[28] *Id.* at 80.
[29] *Id.* at 81.
[30] *Id.* at 83.
[31] *Id.* at 99.
[32] *Id.* at 91.
[33] *Id.* at 91.
[34] *Id.* at 85-86, 94-95.
[35] Appellant's Opening Br., D.I. 7, Ex. F.

6

employment and (3) the employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.[36]

As to the second *Dalton* factor, the Board found that "there was sufficient evidence to show there was pressure put on employees to play that by implication [softball] was an employee related activity"[37] The Board reasoned that: (1) pressure was put on members of the team to play and for certain employees to join the team, (2) Morris James asked job applicants whether they played softball, (3) Morris James told an injured employee to submit a workers' compensation claims for two prior softball injuries and both claims were accepted, and (4) Morris James told Weller to submit a workers' compensation claim.[38] By taking these actions, the Board concluded that Morris James brought "participation in the softball team within the sphere of employment related activity."[39]

Regarding the third *Dalton* factor, the Board held that Morris James met the third prong because it derived a substantial and direct benefit from the softball team.[40] In reaching its conclusion the Board relied on: (1) the testimony of Herweg, Morris James' Executive Director, that Morris James "realized a benefit in the form

---

[36] *State v. Dalton*, 878 A.2d 451, 456 (Del. 2005).
[37] Appellant's Opening Br., D.I. 7, Ex. F. at 11.
[38] *Id.*
[39] *Id.*
[40] *Id.*

7

of increased productivity"; and (2) the fact that the Morris James allows non-employees, such as vendors, to play on the team and "several vendors on the team can provide a business benefit for the firm."[41]

### III. THE PARTIES CONTENTIONS

On appeal, Morris James argues that the Board's decision should be reversed for three reasons. First, Morris James argues that the Board erred by considering new evidence on factual issues which were not appealed.[42] According to Morris James, the scope of issues to be addressed during a remanded hearing is limited to the issues raised on appeal.[43] In its first appeal Morris James challenged: (1) whether the Board applied the proper legal standard;[44] (2) whether a standard-use-of-premises or "Hold Harmless" contract demonstrated a modicum of Morris James' control over the recreational event;[45] and (3) whether there were sufficient facts to demonstrate Morris James derived a benefit in the form of increased employee productivity from its employees' participation in softball.[46] Therefore, the scope of the remand hearing should have been limited to applying the correct legal framework to the previously litigated facts and only considering new evidence related to the

---

[41] Id. at 12.
[42] Appellant Opening Br., D.I. 7, at 14.
[43] Id. at 15.
[44] *Id.*
[45] *Id.* at 16.
[46] *Id.*

8

appealed issues (the "Hold Harmless" contract and whether there was any employer-derived benefit.)[47]

Second, Morris James argues that the Board erred when it concluded that Weller met his burden to show an employer-based benefit from the softball team.[48] In reaching its conclusion the Board relied on Herweg's prior testimony about productivity and evidence of non-employee vendor participation. According to Morris James, the Board's continued reliance on Herweg's productivity testimony contravened this Court's previous admonition to disregard it and, further, such evidence failed to demonstrate a direct and tangible benefit.[49] Morris James also contends that mere evidence of non-employee vendor participation, without more, is insufficient to demonstrate any substantial, direct benefit to Morris James.[50]

Third, the Board erred in concluding that Morris James took action to bring softball participation within the sphere of "employment related activity." In particular, the Board relied on: (1) the fact that Weller was told to submit a workers' compensation claim, (2) prior softball injury claims by Morris James' employees were covered under workers' compensation, and (3) pressure was put on members of the team to play. Morris James argues that the Board erred in relying on prior

---

[47] *Id.* at 17.
[48] *Id.* at 17-26.
[49] *Id.* at 18-24.
[50] *Id.* at 24-26.

9

workers' compensation coverage because prior coverage was due to its prior insurance carrier's errors and Morris James should not be bound by those mistakes.[51] Morris James also argues that its instructions to report softball injuries were statutorily obligated and therefore did not expand the scope of Morris James' employees' services.[52] Lastly, Morris James contends that the Board's reliance on subjectively-felt pressure was insufficient to meet *Dalton's* second factor because softball participation was optional and evidence of subjective pressure is distinguishable from required participation.[53]

In response, Weller argues that the Board correctly considered new evidence at the remand hearing.[54] According to Weller the scope of the remand hearing relates to the issues on appeal and remand: whether softball was a work-related activity at the time of Weller's injury and correct application of the *Dalton* factors.[55] Weller contends that the new testimony dealt with the second and third *Dalton* factors.[56] Therefore, according to Weller, because the *Dalton* test and whether his injury was work-related were the issues on remand, evidence—including new evidence—on those issues was well within the scope of the remand hearing.[57] Weller also asserts

---

[51] *Id.* at 26-29.
[52] *Id.*
[53] *Id.* at 29-33.
[54] Appellee's Answering Br., D.I. 9, at 17-20.
[55] *Id.* at 20.
[56] *Id.* at 17-18.
[57] *Id.*

that the Board's decision was supported by substantial evidence and free from legal error.[58]

## IV. STANDARD OF REVIEW

The Board's decision must be affirmed so long as it is supported by substantial evidence and is free from legal error.[59] Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion.[60] While a preponderance of evidence is not necessary, substantial evidence means "more than a mere scintilla."[61] Questions of law are reviewed *de novo*,[62] but because the Court does not weigh evidence, determine questions of credibility, or make its own factual findings,[63] it must uphold the decision of the Board unless the Court finds that the Board's decision "exceeds the bounds of reason given the circumstances."[64]

## V. DISCUSSION

## I. THE BOARD CORRECTLY CONSIDERED NEW EVIDENCE AT THE REMAND HEARING.

---

[58] *Id.* at 21-34

[59] *Conagra/Pilgrim's Pride, Inc. v. Green*, 2008 WL 2429113, at *2 (Del. June 17, 2008).

[60] *Kelley v. Perdue Farms*, 123 A.3d 150, 153 (Del. Super. 2015) (citing *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009)).

[61] *Breeding v. Contractors-One-Inc.*, 549 A.2d 1102, 1104 (Del. 1988).

[62] *Kelley*, 123 A.3d at 152–53 (citing *Vincent v. E. Shore Markets*, 970 A.2d 160, 163 (Del. 2009)).

[63] *Bullock v. K-Mart Corp.*, 1995 WL 339025, at *2 (Del. Super. May 5, 1995) (citing *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66–67 (Del. 1965)).

[64] *Bromwell v. Chrysler LLC*, 2010 WL 4513086, at *3 (Del. Super. Oct. 28, 2010) (quoting *Bolden v. Kraft Foods*, 2005 WL 3526324, at *3 (Del. Dec. 21, 2005)).

The Delaware Workers' Compensation Statute states "[i]n case any cause shall be remanded to the Board for a rehearing, the procedure and the rights of all parties to such cause shall be the same as in the case of the original hearing before the board."[65] Thus, it appears on remand of a workers' compensation claim that all evidence previously taken becomes part of the record on remand, and that the parties may augment that record by offering additional evidence or legal argument.[66] The Court in *State v. Steen* found similarly, stating "the statutory scheme for conducting a hearing on remand is unambiguous. The Board is to decide the matter, after the remand hearing, on the basis of the evidence from the prior hearing plus any new evidence and legal arguments the parties decide to present."[67] The scope of evidence properly presentable on remand was then narrowed by *Johnson Control, Inc. v. Haines*.[68] There the Superior Court held, "*Steen* does not require the Board to hear the *entire* case anew on remand, but rather, allows the parties to revisit the issue identified by this Court as problematic."[69] Therefore, the Court concludes that on remand parties are entitled to introduce new evidence and new legal argument with respect to the issue identified as "problematic."

---

[65] 19 Del. C. § 2350(b)
[66] *Mullens v. Worthy Const. Co.*, 2001 WL 1738868, at *4 (Del. Super. Ct. Oct. 15, 2001).
[67] *State v. Steen*, 719 A.2d 930, 934 (Del. 1998).
[68] *Johnson Controls, Inc. v. Haines*, 1999 WL 1568334 (Del. Super. Ct. Oct. 12, 1999).
[69] *Id.* at 2 (emphasis added).

12

Here, the problematic issue was the application of the *Dalton* factors. This Court previously stated "the Court remands this case to the Board for it to apply the *Dalton* factors," and "[o]n remand, the Board shall take these considerations into account when it applies the *Dalton* factors."[70] The Court identified the problematic issue. Therefore, the Board correctly considered new evidence on the *Dalton* factors.

Morris James contends that *Blue Hen Lines, Inc. v. Turbitt* limits the scope of the remand hearing to the issues on appeal.[71] As a result, the Board was restricted to: (1) applying the correct legal framework to the previously litigated facts; and (2) considering new evidence related to the appealed facts.[72] However, Morris James's reasoning and reliance on *Turbitt* is misplaced. The natural consequence of Morris James's formulation would be to require a prevailing party to appeal all of the issues on which it was unsuccessful even though the overall outcome was favorable to it. Moreover, the weight of case law suggests a broader scope of the hearing on remand. To the extent there was any uncertainty in the scope of the hearing on remand, the

---

[70] *Morris James LLP v. Weller*, 2017 WL 1040713 at *7 (Del. Super. Ct. Mar. 16, 2017).
[71] Appellant's Op. Br., D.I. 7, at 15. *Blue Hen Lines, Inc. v. Turbitt*, 787 A.2d 74 (Del. 2001) (if an appellate court orders a remand to an administrative agency, there is no reason to reopen other issues that are not related to issues to be resolved on remand and which were not raised on appeal.).
[72] Appellant's Opening Br., D.I. 7, at 17.

13

Court finds it was properly resolved by the Board in favor of allowing the Weller to present additional evidence and legal argument.[73]

## II. THE BOARD'S CONLCUSION THAT MORRIS JAMES DERIVED A SUBSTANTIAL BENEFIT FROM SOFTBALL IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

In determining whether an injury at a non-company sponsored recreational event occurred within the course and scope of employment the standard set out by the court in *Dalton* is disjunctive. A claimant need satisfy only one of the three *Dalton* factors to find an activity within the course and scope of employment.[74] The third *Dalton* factor evaluates whether "the employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life."[75]

This Court noted, with particularity, that the weight of authority holds that intangible benefits alone are not enough to bring a recreational event within the course and scope of one's employment.[76] A "direct benefit" to an employer in a social context generally includes "the benefit a business gains from having its employees entertain clients, the participation of employees in business-related clubs

---

[73] *Mullens*, 2001 WL 1738868, at *6.
[74] *State v. Dalton*, 878 A.2d at 456 (Del. 2005).
[75] *Id*. at 456.
[76] *Morris James* v. *Weller,* at *6 (citations omitted).

14

and organizations or social activities . . . ."[77] In the context of a recreational event, such as a softball game, a "direct benefit" to an employer includes business advertising, publicity, and monetary gain.[78] It is that kind of direct, substantial, and tangible benefit that *Dalton* requires.

The Board concluded that Morris James derived a "substantial direct benefit" from the softball team in the form of increased productivity.[79] In its decision, the Board cited Herweg's testimony "that [Morris James] realized a benefit in the form of increased productivity," and that it relied "on his representation as an officer of the firm."[80] Such enhanced productivity is a consequence of the increased morale, camaraderie, and health of the employees resulting from participating on the softball team and is the very type of benefit this Court admonished the Board to disregard.[81] Enhanced morale and health are the exact benefits *Dalton* and the majority of courts have deemed insufficient to demonstrate a substantial, direct benefit to an employer.[82] *Dalton* requires "substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale."[83] Furthermore,

---

[77] *See Ostrowski v. Wasa Elec. Servs., Inc.*, 960 P.2d 162, 171 (Haw. Ct. App. 1988); *Larson's* at § 22.05[1].

[78] *See Ostrowski*, 960 P.2d 162, 171–72; *Larson's* at § 22.05[2].

[79] Appellant's Opening Br., D.I. 7, Ex. F.

[80] *Id.*

[81] Appellant's Opening Br., D.I. 7, Ex. A. at 72, 77-78.

[82] *State v. Dalton*, 878 A.2d at 456 (citations omitted).

[83] *Id.*

this form of enhanced productivity is unlike the business-specific benefit described in *Dalton*. Morris James is a law firm; its goal is to bring in legal business. Morris James derives no business benefit by having Weller participate in softball. Morris James does not advertise its legal services at games, its clientele does not attend or participate at games, and softball has no beneficial monetary impact on the firm.

There are other problems with the Board's reliance on this snippet of Herweg's testimony. The first is that it ignores its context. That context is:

> MR. GROUNDLAND: Mr. Weller [sic], do you believe that enhancing morale, enhancing camaraderie, enhancing good will, all those three things combined, would enhance ultimate productivity for the firm?
>
> THE WITNESS: Yes.
>
> MR. GROUNDLAND: Would it enhance productivity?
>
> THE WITNESS: It would. I mean that's the goal, that's the hope of it. It's the attitude that I've tried to foster since I've been there.[84]

When viewed in its proper context, Mr. Herweg's testimony was clearly referring to those intangible benefits that improved morale, camaraderie and good will provide, in other words, the very considerations the Court cautioned the Board against taking into account. The second problem is that the Board failed to cite any evidence that this productivity benefit is "substantial." At best, it is aspirational, as evidenced by

---

[84] Appellant's Opening. Br. D.I. 7, Ex. C at 77:25-78:9.

Mr. Herweg's qualifying comments that enhanced productivity was his "goal" or "the hope of it." There is no evidence that his "goal" or "hope" ever was realized in fact. The final problem is that the Board ignored Mr. Herweg's more extensive testimony on the actual considerations the Board was to take into account regarding productivity. That testimony was:

> Q. What benefit does Morris James derive from supporting these games?
>
> A. I think it's just morale, camaraderie, there's some exercise, promote health. But we get so many people that aren't playing that just go because it is a fun event to be at.
>
> Q. And when you refer to employee health, does that include mental health?
>
> A. Mental health, physical health, get out of the office, clear your brain, don't worry about the case tomorrow for two hours, and just have some fun, you can relax a bit.
>
> Q. Is there any other benefit the firm derives from these games?
>
> A. I mean, not that I'm aware of.
>
> Q. Has the firm ever used the softball games as a means by which to solicit business?
>
> A. No.
>
> Q. Do any of the firm's clients or prospective clients participate?
>
> A. Not that I'm aware of. I mean, there could be somebody playing on one of the teams, but I – the teams are either law firms or court/judicial groups.

17

Q.    Does the firm derive any direct business benefit by putting its name on the uniforms?

A.    No.

Q.    And what is the purpose of that?

A.    To identify us. Every team has shirts, every team likes to have their name on their shirt. It identifies which team you're on.[85]

Thus, the only relevant testimony bearing on whether Morris James received a substantial, direct benefit by virtue of its employees playing on a softball team, consistent with *Dalton*, establishes that it did not.

The Board also "believes that having several vendors on the team can provide a business benefit for the firm, for example as in cost savings for vendor services."[86] The Board's conclusion is entirely conjecture as the Board failed to identify any actual benefits Morris James received from any vendors.[87] There is no evidence in the record that of that the vendors on the team provided any business benefit to Morris James, including any of the supposed cost savings the Board speculated it might receive. Conjecture is not substantial evidence. It does not provide even a mere scintilla of evidence to support the conclusion, nor would a reasonable mind accept it as adequate. Accordingly, the Board's conclusion that

---

[85] *Id.* at 72:1-73:5.
[86] Appellant's Opening. Br., D.I. 7, Ex. F. at 12.
[87] *Id.*

18

Morris James derived a substantial, direct benefit from softball participation is not supported by substantial evidence.

## III. THE BOARD COMMITTED LEGAL ERROR WHEN IT MISAPPLIED THE SECOND DALTON FACTOR.

Because the *Dalton* standard is disjunctive, Weller may prevail upon satisfaction of the second factor only. The second *Dalton* factor requires substantial evidence that "the employer, by expressly or impliedly requiring participation, or by making the activity part of the services of the employee, brings the activity within the orbit of the employment."[88] In essence, an action will be "within the course or scope of employment" when an employer takes action, either expressly or implicitly, that makes participation in an activity a required part of the employee's job.

The Board concluded that Morris James took action that brought softball participation "within the sphere of an employment related activity."[89] The Board misconstrues the applicable *Dalton* factor and, in effect, makes up a new factor. "[E]mployment related activity" is not the correct factor and is not congruent with the correct factor - "expressly or impliedly requiring participation" or "making the

---

[88] Appellant's Opening Br., D.I. 7, Ex. F. at 11.
[89] Appellant's Opening Br., D.I. 7, Ex. F. at 11. The Board wrote, "First the Board finds that there was sufficient evidence presented to show that there was pressure put on employees to play that by implication it was an employment related activity; and (2) Thus there was clearly some actions taken by Employer to bring participation in the softball team within the sphere of an employment related activity."

19

activity part of the services of the employee" so as to bring "the activity within the orbit of the employment." An "employment related activity" may be many things. It may be optional or discretionary. "Employment related activities" may include the social and recreational aspects of employment. In the *Dalton* context, it is a meaningless term. The Board cited as evidence supporting its conclusion that softball was "employment related" the "pressure put on members of the team to play and for new employees, in particular female employees, to join the team" and the fact that Morris James told injured employees to submit workers compensation claims (one of whom did so successfully.)[90] But, this evidence proves nothing, because absent this evidence, softball would still be "employment related." Simply by virtue of the fact that the team represented Morris James and was predominately composed of Morris James employees would make softball "employment related." The factor adopted by the Board is simply too elastic to comport with *Dalton,* and is legal error. Further, as a result of its failure to apply the correct *Dalton* factor, the Board never actually made a finding that Morris James expressly or impliedly required participation or, made softball part of Weller's services as an employee, so as to bring softball within the orbit of his employment.

## IV. THERE WAS NOT SUBSTANTIAL EVIDENCE TO SUPPORT A CONCLUSION THAT MORRIS JAMES TOOK ACTION TO BRING SOFTBALL WITHIN THE ORBIT OF EMPLOYMENT.

---

[90] *Id.*

20

Here, the Board concluded that softball participation was an "employment related" activity for two reasons. First, pressure was put on employees to play, and second, Morris James told Weller and one player who was injured previously to submit workers' compensation claims. In the earlier case the employee received benefits. Here, there is no evidence that participation was a pre-requisite or required activity of employment. Rather, participation was a matter of personal choice.[91] Current team members inquired and extended invitations to potential participants.[92] Invitees could accept or decline. Furthermore, any objective pressure came from team members in their individual capacities in an effort to encourage their teammates to keep the commitment they made to play for the team. The evidence illustrates independent actions by employees not attributable to Morris James as employer.

In reaching its decision, the Board focused on female team members' subjectively-felt pressure.[93] The subjective feelings of employees, however, are not what *Dalton* addresses. *Dalton* addresses the actions of the employer to bring the activity within orbit of employment. Otherwise, it would be the employee, not the employer who defines the orbit of employment. The Court also notes the lack of evidence regarding Weller himself. The Board failed to even mention whether the Weller, the subject of the litigation, was exposed to such pressure. Based upon the

---

[91] Appellant's Opening Br., D.I. 7, Ex. G. at 59, 72, 85.
[92] *Id.* at 35, 41-42, 46-48, 54, 81.
[93] Appellant's Opening Br., D.I. 7, Ex. F. at 12.

evidence, or lack thereof, pressure to participate does not demonstrate that softball was a required activity within the orbit of employment.

The Board also concluded that softball participation was an "employment related" activity based upon the coverage of prior workers' compensation claims. This conclusion is curious. Morris James was required to report the injuries pursuant to 19 *Del. C.* § 2362(a), which has a mandatory reporting requirement.[94] Morris James's simply followed Section 2362(a)'s mandatory requirements. Weller was told to submit his injury claim.[95] The firm's insurance carrier determined whether to accept or deny coverage.[96] Because Morris James simply followed its mandatory reporting requirement its actions cannot be construed as an affirmative action bringing the activity within the orbit of employment. Additionally, there was unrebutted testimony that Morris James' prior workers' compensation carrier mistakenly covered the previous softball injuries.[97] The fact that a previous insurance carrier mistakenly paid another employee's workers compensation claims provides no support for, and in fact is irrelevant to, a conclusion that Morris James

---

[94] 19 *Del. C.* § 2362(a) states that: An employer or its insurance carrier shall within 15 days after receipt of knowledge of a work-related injury notify the Department and the claimant in writing of: the date the notice of the claimant's alleged industrial accident was received; whether the claim is accepted or denied; if denied, the reason for the denial; or if it cannot accept or deny the claim, the reasons therefor and approximately when a determination will be made.
[95] Appellant's Opening Br., D.I. 7, Ex. A. at 40.
[96] *Id.*
[97] *Id.* at 119.

brought softball into the orbit of Weller's employment. It would be a curious result indeed if the prior mistakes of a third party, no longer involved in any way with any party here, were to define for Morris James the orbit of Weller's employment. The Court finds that there is not substantial evidence that Morris James took action to bring softball participation within the orbit of employment.

## VI. CONCLUSION

The Court finds that there is not substantial evidence to support the Board's decision, nor is that decision free from legal error. Therefore, the decision of the Board is hereby **REVERSED**.[98]

**IT IS SO ORDERED.**

_____
Ferris W. Wharton, Judge

---

[98] The matter is not remanded to the Board for a third hearing. After two full hearings, the Court believes that the parties have had ample opportunities to develop the facts, and that those facts are simply inadequate to support a finding of compensability. In reaching this conclusion, the Court has accepted all of the factual findings of the Board, *e.g.,* that certain employees felt pressured to play softball and that an employee was compensated previously under workers' compensation. The Court does not accept, however, the manner in which the Board applied those facts to the *Dalton* factors in reaching its decision.

23